The opinion of the court was delivered by.
Green, C. J.
Peter Prall, by his last will and testament, gave and bequeathed the one-fourth part of the residue of his personal estate to his son-in-law, John P. Quick, in trust, nevertheless, for the use, benefit and support of his granddaughter, Mary Fisher, to be paid to her, the said Mary Fisher, by the said John P. Quick, as her necessities may require. Prior to the first of May, 1830, John P. Quick, the trustee, received the trust funds so bequeathed to him, *803 amounting to two thousand one hundred and- eighty-six dollars. Of this sum, eighty-six dollars appears to have been paid to the cestui que trust, as it was received on the first of May, 1830. The balance of the fund, two thousand one hundred dollars, was invested in the purchase of real estate, by reason of which a large part of the trust fund is alleged to have been lost. On the sixth of February, 1835, Mary Fisher, the cestui que trust, died, leaving six children. After the death of Mary Fisher, the real estate was sold, and the trustee prepared an account of the trust fund, exhibiting the loss alleged to have been sustained by the investment. In accordance with this statement, a settlement was made by the trustee with four of the children of Mary Fisher; their respective shares of the alleged balance was paid to them, and their receipt taken for the amount'so paid respectively. On the twenty-ninth of December, 1845, the trustee died, the complainants, two of the children of the said Mary Fisher, then being under twenty-one years of age.
The bill is filed by two of the children of Mary Fisher, who were under age at the death of John P. Quick, the trustee, to recover against his executors their share of the trust fund.
It is admitted that the defendants are bound to accounL The only question is upon what principle the account should be stated. The trust fund consisted of money which was invested by the trustee in the purchase of real estate. The complainants claim the full amount of the fund, with interest, deducting only such payments as have been made to the beneficiary, or for her benefit. The defendants claim an allowance for losses sustained by reason of the investment of the fuud in real estate.
I deem it clear, both from the answer and from the evidence, that the trust fund was in point of fact invested in the purchase of real estate. There is no reason to doubt that the investment was made in good faith for the benefit of the beneficiary. She was the daughter of the trustee. She was the wife of a man incapable or indisposed to maintain his family. She was, moreover, the mother of a family *804 of dependent children. The father may well have supposed, under such circumstances, that a fund especially designed for the benefit and support of his daughter would be best invested in providing a home for her and for her children. The investment was made, (if not at the instance of the daughter herself), certainly at the solicitation of her husband and of his friends. The trustee had no personal interest in making the investment, nor, so far as appears, did he derive the least pecuniary advantage from it. On the contrary, he added to the trust fund a considerable amount of his own money, in order to make the purchase and put the property in repair. The beneficiary and her children were put in possession immediately on the completion of the purchase, and they were permitted to continue in the possession and enjoyment of the property so long as the husband of the beneficiary was able to carry on his business, and'immediately upon the death of the cestui que trust the property was sold at a sacrifice. He took the deed for the property, it is true, in his own name and not as trustee, but this he may have done either because he supposed, as appears by the evidence, that he had himself an eventual interest in the trust fund, or because a part of his own property was invested in the purchase, or because he supposed he might thus most effectually control the property as well for the interest of the beneficiary as for his own. I see nothing in the transaction • to impugn in the least degree ' the character of the trustee for integrity, however much he may have erred in judgment or in the estimate of his legal rights. It appears, however, that every dollar of the trust fund received by the trustee prior to the determination to purchase the real estate was paid over as soon as received to the beneficiary, and that the whole balance of the fund with a large sum of the trustee’s individual property, was invested in the purchase of the real estate of which, as has already been said, the beneficiary and her family for years enjoyed the entire benefit. I deem this statement due in justice to the memory of the trustee and especially as the account which was prepared by him years *805 after the death of his daughter, has received, and perhaps justly admits of, a harsh interpretation, affecting, to say the least, the liberality of the accountant. In considering the case it may be fairly assumed not only that, in point of fact, the trust money was invested in the purchase of real estate, but that the investment was made in good faith and from justifiable motives. The question remains, had the trustee the right to make such investment of the trust fund ? And if he had not, then in equity, must the loss be borne by his estate or by the trust fund ?
It is admitted as a general principle, that the trustee has no power to change the character of the trust fund, and that if he assume the power of converting real estate into personal, or personal into real, he acts at his peril.
While he will he suffered to derive no benefit from such change of investment, he will be held personally accountable for any loss which may ensue. While the beneficiary will be permitted, if it appear for his interest, to follow the fund through whatever changes it may pass, the trustee will not be permitted to compel the beneficiary to accept the property after the conversion, or to impose any loss which may result from the conversion upon the trust fund.
If a change in the character of the fund be deemed necessary, or for the interest of the beneficiary, it should be made only with the permission and by the sanction of a court of equity. The rule applies not only to executors, administrators, guardians of infants and lunatics, and other trustees specially constituted by law, but to all bare trustees, having charge of the property of others, and not specially invested with peculiar or extraordinary powers. Experience has shown that the rule is a wise and salutary one. The security of the fund is a primary consideration in the investment of the trust estate. The temptations to a trustee to tamper with a trust fund are so numerous and so powerful, the hopes of bettering the estate so often prove delusive, that the power of changing the character of the fund is most safely reposed in the discretion of judicial tribunals.
*806 Nor is the rule prohibiting the change of character of the trust fund founded solely or mainly upon the consideration that the inheritance or succession to the estate is thereby affected. On the contrary, it is a well-settled rule in equity, that the character of the fund will be converted from personal to real or from real to personal, without regard to the succession, whenever the interests of the beneficiary require it. Matter of Salisbury, 3 J. C. R. 347.
The trustee, if the principle be correctly stated, has in this case exceeded his .authority. The loss has been sustained not by an error of judgment committed by the trustee in the management of the trust fund, but by an illegal and unauthorized disposition of 'the trust funds in his hands. He is consequently liable for the loss.
It cannot be objected that these complainants have slumbered over their rights, or that they designedly forbore to prosecute their claim uutil after the death of the trustee They were both infants at the death of the trustee, and consequently were not chargeable with laches. Nor can it be objected that they have in any wise assented to the illegal •disposition of the trust fund, or ratified, directly or indirectly, the act of the trustee. Whatever force there may be in these objections as applied to the other children of Mary Fisher, it does not apply to these complainants.
As to the objection that the husband of Mary Fisher, as her administrator, and not her children, is entitled to this fund, and therefore the children are in no contingency entitled to recover, it is enough to answer, if there be anything in the objection, that it is not a ground of appeal in the present case, and that the objection may be raised upon the final hearing in equity.
The decree should be affirmed.