## MELICK *vs.* VOORHEES.

A trustee who sells at an improper time or without conforming to the conditions of his powers, will be liable for a deficiency of the proceeds of sale, though his intentions were good. He will be held responsible for the highest value the property can be shown to have had, and be decreed to account for the difference.

*Mr. Linn*, for complainant.

*Mr. Allen* and *Mr. Clark*, for defendant.

Melick *v.* Voorhees.

THE VICE-CHANCELLOR. .

The complainant, Peter Melick, being the owner, in September, 1861, of one hundred and three acres of land or thereabouts, on which was a mill, situate in the county of Hunterdon, on which land were three mortgages, the third in priority being held by Peter E. Voorhees, and being embarrassed by debt, made conveyance of the lands to said Voorhees, for the purpose of paying, first, what was due on the mortgages ; second, certain other specified debts, and third, the balance (if any should be realized by Voorhees on disposing of the property,) to the complainant.

The terms and conditions on which Melick conveyed, were embodied in a writing signed by Voorhees, of September 4th, 1861, being also the date of the conveyance. On the 1st of April, 1862, Melick gave possession of the premises to Voorhees, who leased them from that date till he sold and conveyed them to Charles Dayton, on the 17th of October, 1863.

In April, 1872, Melick filed the bill in this suit against Voorhees, for an accounting and settlement of the income and proceeds of the property, and if it should appear to have been sold or disposed of by Voorhees, for a less sum than it was reasonably worth, contrary to the spirit or true intent of the agreement, that he be decreed to pay for the full and fair value of the property, such price as might have been reasonably obtained.

Voorhees filed an answer, but died on the 17th of October, 1872, very soon after the testimony on behalf of the complainant was closed, and before any had been taken for the defendant. The suit being duly continued, has been argued upon the pleadings and proofs.

The amount of principal and interest on the mortgages was computed in advance to April 1st, 1862, when Melick was to give up possession. This amount was $14,866.50, and was the consideration expressed in the deed of conveyance of September 4th, 1861. But the parties contemplated a sale of the premises by Voorhees, and the provisions of the

writing were, in substance and effect, that he should sell as soon as possible, and, after deducting the mortgage indebtedness, apply the surplus, if any, to the pro rata payment of three specified debts; one to John Rinehart, one to John Lane, and one to Voorhees himself, and the remainder, if any, to Melick. In case any offer of purchase should be made for the premises, the acceptance of the offer was to be decided by said Voorhees, Melick, Rinehart, and Lane, or any two of them, and should Voorhees, after such decision to sell, not think it advisable, then he, himself, was to pay the amount offered, and keep the property as his own; the true intent and meaning being declared to be, that the property should be sold as soon as possible, to the best advantage of the parties aforesaid.

Voorhees sold to Dayton, without consulting either Rinehart, Lane, or Melick. He sets out in his answer the particulars of the sale, and his defence is that he never realized from the property, by rental and sale, an amount sufficient to pay the mortgage encumbrances; that he made every effort to sell to the best possible advantage, and that after selling to Dayton, a large deficit was left, the loss of which fell upon himself, as the third mortgagee.

It is not denied that the express trust created by the agreement was violated by his neglect to submit the offer of Dayton to the decision of the other parties interested in the sale. The insistment is that the property was sold for its highest attainable price, and to the question of its value the evidence in the cause is chiefly directed. I shall not now review it at length.

The consideration expressed in the conveyance from Voorhees to Dayton, was $18,000. But the answer avers that this sum was merely nominal, inserted at Dayton's request, and was not the true price; that the true and only consideration was $1800 in cash, and two tracts of land, one at Morristown and one at Mill Brook, each of which was subject to a mortgage, and each of which was shortly afterwards sold. The details of the transaction are sworn to in the answer, and are also sworn to by John E. Voorhees, who had charge of and

conducted the sale and exchange for his father. There is no evidence in contradiction of the details as thus stated. It is nevertheless patent how a sale of trust property so conducted, in the absence and without the knowledge of the parties interested, and whose covenanted right it was to be notified and advised with, must necessarily and properly be suggestive of unfairness or fraud. All reasonable presumptions are against a sale so conducted, and only plenary proof will avail to rebut such presumptions. But notwithstanding the unfavorable suggestions of the facts, unaccompanied by explanatory proof, I am of opinion that such proof must be admitted to exist, and that the amount realized by Voorhees from the sale or exchange, was, in fact, less than the amount due on the mortgages. I am constrained to believe that his disregard of the provisions of the agreement, may be referred to his impression that neither Rinehart, or Melick, or Lane considered the value of the property as at all beyond, if equal, to the last mentioned sum, and that neither of them cared to be consulted, or could aid him in effecting a sale. The evidence, I think, warrants the belief that this impression was honestly entertained, and this being so, the imputation of bad faith may be avoided.

But the absence of bad faith is not a sufficient defence to the suit. A trustee who sells at an improper time, or without conforming to the conditions of his powers, will be liable for a deficiency of the proceeds of sale, though his intentions were good. He will be held responsible for the highest value the property can be shown to have had, and be decreed to account for the difference. At the time of the sale or exchange, the Mill Brook and Morristown lots were taken at an estimated value. Voorhees may have expected to get more for them than he afterwards did, and the net proceeds obtained cannot settle, or go far to settle, the actual value of the premises that he conveyed in exchange.

The valuation, as made by the witnesses, is mainly between the limits of $12,000 and $20,000. These limits are extreme, and from the best judgment I am able to form from the

evidence, the truth lies between them.  Rinehart says that the property was worth about $17,000 at the time Melick deeded to Voorhees, and that afterwards, during the time Voorhees held it, he would have been willing to give $15,000 for it.  Fisher says that in the winter of 1861, he had a contract with the owner, before Melick bought, by which he was to have it for $15,500.  If he could have had it at one time, he says he would have given for it $16,000, but that that was the extent.  On his cross-examination, he says that he did afterwards express himself gratified at not having got it for $15,500.  Lane also says about $17,000, but manifestly thinks that sum a high price.  The true inquiry is, what was the highest price that could have been obtained at a sale ?  Taking all the facts and the evidence in the cause, my opinion is, that $16,000 is the maximum amount that can fairly be arrived at.  I do not doubt that a sale for that sum would have been advised by Rinehart and Lane, and also by Melick, and would in fact have been an advantageous sale.

From April 1st, 1862, to October 17th, 1863, the interest, taxes, and repairs, paid by Voorhees, are to be considered from the evidence as equaled by the proceeds and rents.  At the last mentioned date, the defendant is to be charged with $16,000, and credited with $14,866.50.  The complainant is entitled to a decree for the difference, with lawful interest from the same date.  The amount so obtained is to be applied, first, to the pro rata payment of whatever shall be ascertained to be due, as specified in the agreement, from Melick to Lane, Rinehart, and Voorhees, respectively, and the balance, if any to complainant.  It should be referred to a master to ascertain these amounts.