By the bill complainant seeks the removal of defendant Guarantee Trust Company as trustee under a certain instrument of trust, the appointment of a new trustee and an accounting by the trustee so removed; the bill also seeks to fasten upon the trustee, as personal obligations, liability for certain losses which are claimed to have arisen from alleged breaches of trust duties upon the part of the trustee.
The trust was created to enable the Ventnor Syndicate — a real estate corporation which is now insolvent — to issue and sell a series of its bonds. The trust agreement, under date of September 1st, 1911, was executed by three corporations — the Ventnor Syndicate, who was to issue the bonds, the West Jersey Mortgage Company — a corporation which is insolvent now also — who was to guarantee the payment of interest and principal of the bonds, and the Guarantee Trust Company, who was to act as trustee and certify to the bonds as they were issued from time to time pursuant to the terms of the trust agreement.
The provisions of the trust agreement authorized the Ventnor Syndicate from time to time to assign to the trustee bonds and mortgages which were to be appraised as to value by the West Jersey Mortgage Company; as such bonds and mortgages, so assigned and appraised, were deposited with the trustee bonds in like amounts, known as "guaranteed collateral bonds," could be issued by the Ventnor Syndicate upon such collateral bonds being guaranteed as to the payment of principal and interest by the West Jersey Mortgage Company and certified to by the trustee as having been issued pursuant to the terms of the trust agreement. The purchaser of a collateral bond would thus hold the direct bond obligation of the Ventnor Syndicate, the guarantee of payment of the West Jersey Mortgage Company of the principal and interest of the collateral bond, and also share pro rata with other holders of collateral bonds the security afforded by the bonds and mortgages of equal amount which had been and might thereafter be in like manner assigned to the trustee by the Ventnor Syndicate as a trust fund to secure payment of the principal and interest of the collateral bonds. The collateral bonds were all dated September 1st, 1911, and drew interest at six per cent., *Page 452 
payable each six months and matured as to principal three years from their date.
The authorized issue under the trust agreement was $200,000 in amount; $79,000 were issued. Two of the issued bonds, aggregating in amount $2,000, were subsequently surrendered to the trustee; accordingly, there is now outstanding $77,000 of the collateral bonds. Complainant owns two of these bonds, aggregating in amount $2,000. The Guarantee Trust Company, the receivers of the Ventnor Syndicate and West Jersey Mortgage Company, and all the holders of collateral bonds other than complainant are made defendants. The Guarantee Trust Company and the receiver of the West Jersey Mortgage Company have answered.
A charge is made by complainant to the effect that the trustee transcended its powers by accepting mortgages for the trust fund which were not authorized by the trust agreement. Of the $77,000 in amount of mortgages which now constitute the trust fund, all but $10,000 are mortgages which were made by the Ventnor Syndicate to the trustee on land owned by the Ventnor Syndicate; each mortgage is accompanied by a bond of the Ventnor Syndicate which it secures. The trust agreement does not authorize the trustee to accept for the trust fund mortgages made by the Ventnor Syndicate to the trustee. Throughout the trust agreement, in instances almost too numerous to justify specification, the bonds and mortgages which are to be made the trust fund are declared to be bonds and mortgages which are to be assigned to the trustee. On the first page of the trust agreement it is recited that the Ventnor Syndicate "has determined to issue its guaranteed collateral bonds, as hereinafter set forth, and to secure the same by assignment to and deposit with the trustee of bonds and first mortgages." In the form of the collateral bond embodied in the trust agreement, which form conforms to the form of the collateral bonds as subsequently issued, it is stated:
"To secure the payment of this bond and all other bonds which constitute this series, together with interest thereon, there have been assigned to and deposited with the said Guarantee Trust Company as trustee, bonds and first mortgages of a par value of not less than the par value of the bonds of this series outstanding and certified by the said trustee *Page 453 
to be held in trust by the said trustee, and its successors, for the benefit of the holders of said bonds according to a certain Trust Agreement. * * * This `bond shall not become valid until the certificate hereon shall be signed by the trustee."
The form of trustee's certificate embodied in the agreement, which form conforms to the form thereafter used as collateral bonds were from time to time certified by the trustee, is as follows:
"It is hereby certified that the within bond is one of the Guaranteed Collateral Bonds of Ventnor Syndicate, all of like tenor and effect, and in denominations of one thousand or five hundred dollars each, amounting in the aggregate to two hundred thousand dollars ($200,000) described in the agreement therein mentioned. Guarantee Trust Company, Trustee."
The second paragraph of the trust agreement is as follows:
"2. That Ventnor Syndicate, a corporation of the State of New Jersey, party of the first part, has granted, bargained, sold, assigned and set over and by these presents doth grant, bargain, sell, assign and set over unto the Guarantee Trust Company, also a corporation of the State of New Jersey, party hereto of the second part, all the bonds and first mortgages set forth and described in the schedule hereto annexed and which forms a part of this instrument, and bears even date herewith, and is identified by the certificate of the Trustee and of the Company, it being the intention of the Company to assign and set over said bonds and mortgages to the Trustee fully and effectually not only by these presents but also by a separate instrument of assignment of each of the said bonds and mortgages."
It will be noted that the schedule there referred to is a schedule which is to be built up from time to time as mortgages are assigned to the trustee. Paragraph 3 of the trust agreement provides:
"That inasmuch as at the time of the execution and delivery of these presents, the Company may not desire to issue all the said Guaranteed Collateral Bonds, and to transfer and assign to the Trustee bonds and mortgages or other securities to the full contemplated amount of TWO HUNDRED THOUSAND DOLLARS ($200,000), it is agreed that from time to time hereafter the Company may issue its said bonds and assign to the Trustee bonds and first mortgages until the amount of TWO HUNDRED THOUSAND DOLLARS ($200,000) in value of such bonds and mortgages is made up, and that as the said bonds and mortgages are assigned and delivered to the Trustee, they shall be entered in the Schedule hereto attached, and shall form a part of the Trust Fund hereby created, and *Page 454 
shall in all respects be subject to the provisions of this agreement with like force and effect as if they and the particulars thereof had been entered in said Schedule at the time of the execution and delivery hereof, and as if such bonds or mortgages had then been assigned and delivered to the Trustee. The Trustee shall be under no obligation to record this instrument or the assignment of any of the bonds and mortgages constituting the Trust Fund at any time unless and until any default shall be made on the part of the Company in the payment of interest on the Company's bond, or any of them, or unless and until in its judgment the protection of the bondholders shall require such action on its part."
Paragraph 4 provides:
"At the time of the presentation of any of said bonds to the Trustee for certification, there shall be delivered to the Trustee a request in writing signed by the President of the Company, certified under the seal of the Company, requesting the Trustee to certify and deliver to the Company or its nominee a specified amount of such bonds, together with such number of said bonds as the Company desires to be certified for issue, and bonds and first mortgages equal in value to at least the par value of the bonds so to be issued, together with properly executed instruments of assignment thereof to the Trustee. Upon the receipt thereof, the Trustee shall permit the Company to enter said bonds and mortgages in the annexed schedule as hereinbefore provided or shall itself make such entry and shall forthwith certify the bonds so presented to it for certification and deliver the same to the Company for issue."
Paragraph 5 provides:
"That in case the Company shall, for any reason deem it necessary to take any proceedings for the collection by foreclosure or otherwise, of any bond and mortgage belonging to the Trust Fund, the Company shall forthwith substitute bonds and first mortgages, of equal value, and shall assign and transfer the same to the Trustee to be held as part of the Trust Fund, and shall thereupon be entitled to the delivery to it of the bond and mortgage which is so to be collected."
It will be noted that this provision contemplates a possible foreclosure by the Ventnor Syndicate of mortgages withdrawn from the trust. In paragraph 5 it is also provided:
"Whenever and as often as there shall be in the hands of the Trustee cash belonging to the Trust Fund, the Company shall have the right to have such cash paid to it upon transferring and assigning to the Trustee bonds and first mortgages equal in value to the amount of such cash.
"So long as the Company shall not be in default under any provision of this agreement, it shall be entitled to receive from the Trustee, if and when collected, all income from the `bonds and mortgages comprising the Trust estate." *Page 455 
Paragraph 6 provides:
"That upon the collection by the Trustee of any bond and mortgage forming part of the Trust Fund, the Trustee may, unless the Company shall within thirty days from the time when the amount of such collection shall have been received by the Trustee, assign to and deposit with the Trustee bonds and mortgages, equal in value to the amount of such collection, proceed to invest the amount so collected in bonds and first mortgages, such bonds and mortgages shall thereupon become a part of the Trust Fund. If upon collection, by the Trustee of any bond and mortgage, the amount realized shall be less than the amount of principal and interest due upon said bond and mortgage at the time of such collection, the Company agrees to deliver to the Trustee additional bonds and first mortgages duly assigned to the Trustee, in an amount equal in value to the amount of such deficiency."
In paragraph 7 it is provided: "In case of withdrawal of any such bond and mortgage the trustee shall reassign the same to the company." The eighth paragraph provides: "That all bonds and mortgages assigned and transferred by the company to the trustee as hereinbefore provided shall be accompanied by a policy" of title insurance. Also:
"All bonds and mortgages assigned and transferred by the Company to the trustee to constitute the Trust Fund herein provided, shall be accompanied by a written appraisal of value to be made and certified to by the guarantor." * * * "It shall be no part of the duties of the trustee to make investigation concerning nor shall it be responsible for the validity, nature or actual value of the bonds and mortgages so assigned to it, nor shall it be answerable except for the due certification as aforesaid of the company's bonds issued hereunder and for the custody and disposition of the trust fund."
Paragraph 12 again stipulates a duty to assign to the trustee additional bonds and mortgages in certain events.
Nowhere in the entire trust agreement is there to be found any provision which in the slightest degree by inference or otherwise suggests that the trust fund may at any time consist of any asset except cash and assigned bonds and mortgages, and, as already pointed out, the collateral bonds as issued, and certified to by the trustee, expressly declare that they are secured by bonds and first mortgages assigned to and deposited with the trustee. It seems impossible to escape the conclusion that in accepting *Page 456 
for the trust fund mortgages made directly from the Ventnor Syndicate to the trustee which were ereated for the sole purpose of enabling the trustee to certify to collateral bonds, the trustee accepted for the trust fund securities which were not in any way contemplated or authorized by the trust agreement, and certified against such securities collateral bonds of an equal amount contrary to the express provisions of the trust agreement. To that extent the trustee transeended the powers conferred upon it by the trust agreement. The difference in possible value and desirability between a bond and mortgage which has arisen in the ordinary course of trade, such as a mortgage made to the Ventnor Syndicate in part payment for land sold by it or a bond and mortgage made to it for a loan of money in the ordinary course of trade, and a bond and mortgage made by that company to the trustee for the sole purposes of affording collateral security under the trust agreement, are reasonably obvious, and it seems entirely clear that the latter class of collateral was in no way contemplated by the trust agreement. I have searched in vain throughout the instrument of trust to find some provision from which an implied power of the trustee to accept such mortgages for the trust might be reasonably inferred. By accepting such mortgages the whole scheme was, in marked effect, converted into an ordinary bond issue secured by a trust deed of the landowner. Indeed, with mortgages executed by the Ventnor Syndicate made the basis of security, it is difficult to discern substantial advantages to flow from a trusteeship: it would seem that such mortgages should be equally desirable for an investor without a trust. But, however that may be, it is impossible to read the trust agreement, or even the collateral bonds alone, and escape the conviction that the terms of the trust excluded from the trust fund bonds and mortgages made by the Ventnor Syndicate to the trustee as a basis for the collateral bond issue. In that view the trustee must be held to have transcended its power in accepting that class of securities for the trust fund and certifying collateral bonds against them.
The rule of liability of a trustee who has transcended his powers is defined in 28 Am. Eng. Encyel L. 1063, as follows: *Page 457 
"Trustees are bound to observe the limits placed upon their powers, either by law or by the trust instrument, and if they transcend such powers and cause damage to the estate they will be held responsible therefor, although they may have acted in perfect good faith."
Professor Pomeroy defines every violation by a trustee of a duty which equity lays upon him, whether willful and fraudulent, or arising through negligence, or arising through mere oversight or forgetfulness, as a breach of trust, and declares the trustee's personal liability to make compensation for the loss occasioned by such breach of trust to be "a simple contract equitable debt," and also that the amount of liability is always sufficient for the complete indemnification and compensation of the beneficiary. 3 Pom. Eq. Jur. §§ 1062, 1079, 1080. The distinction between a case in which a trustee has transcended the powers conferred by the trust and one relating to matters of judgment or conduct on the part of a trustee in transactions within the trustee's powers necessarily enters into all considerations touching a trustee's liability. For the former there appears to be no justification; for the latter there may be. When the instrument of trust specifically and clearly defines the powers of the trustee there can exist no possible field for the exercise of discretion on the part of the trustee touching the powers he is permitted to exercise. Such powers being specifically defined are necessarily fixed and inflexible. But in transactions of the trustee in the administration of the trust which are within the scope of the defined powers good faith and reasonable diligence and care may justify errors of judgment. There is, of course, a possible field for the exercise of judgment — not discretion — on the part of a trustee in accurately determining the powers conferred upon him by the trust instrument; but if a justification can be found for an error of judgment in that respect it clearly must be found in the want of clear or explicit definition of powers in the trust instrument. In the present case the trust instrument authorized the trustee to certify out collateral bonds of the Ventnor Syndicate when mortgages should be assigned to it. No direction could be more clear or explicit or less capable of misunderstanding. Whether mortgages of the Ventnor Syndicate made directly to the trustee to enable the trustee to certify *Page 458 
out the collateral bonds were more or less desirable than the class of securities which the trust instrument directed to be made the basis of the bond issue is immaterial, so far as the inquiry touching power is concerned; and the circumstance that the trustee may have believed that the direction for assigned mortgages to be made the basis of the trust was not a material direction or that the mortgages which it accepted for the trust were in quality essentially the same as the assigned mortgages required by the trust instrument seems equally immaterial, for the trustee well knew the plain mandate of the trust instrument, and its disregard of that mandate can only be here regarded as a deliberate assumption of unauthorized power. In Gilbert v.Kolb, 85 Md. 627, touching loss sustained by acts of a conventional trustee, it is said: "Loss resulting from an act of a conventional trustee, though the act were done in the utmost good faith, if it were not an act permitted by the instrument creating or defining the trust, or where done without judicial sanction, would fall on the trustee, who, having no discretion at all, or a very limited one, is justly held to a rigid accountability, without the slightest regard to the motives that may have influenced his action, or the prudence he displayed in performing it. Zimmerman v. Fraley, 70 Md. 561." In theZimmerman Case cited, the trustee was authorized to invest "in landed securities;" it was held that the purchase of land transcended the power and rendered the trustee liable. This distinction between acts unauthorized by the trust and errors of judgment or discretion in the performance of authorized acts appears to be recognized by our court of errors and appeals inQuick's Executors v. Fisher, 9 N.J. Eq. 802. The transaction there complained of was the conversion of personal property into real estate. In the reported opinion it is said: "The trustee, if the principle be correctly stated, has in this case exceeded his authority. The loss has been sustained not by an error of judgment committed by the trustee in the management of the trust fund, but by an illegal and unauthorized disposition of the trust funds in his hands. He is, consequently, liable for the loss." In such circumstances, it is there held, the trustee "acts at his peril." See, also, Mèlick v. Voorhees, 24 N.J. Eq. 305; S.C.,25 N.J. Eq. 523. *Page 459 
The ordinary measure of accountability is recompense to thecestuis que trustent for the loss sustained by reason of the breach of trust. Polhemus v. Holland Trust Co.,61 N.J. Eq. 654; Pom. Eq. Jur., supra.
It is obvious that it is here impossible of even approximate ascertainment what losses have fallen to or will eventually be sustained by the collateral bondholders by reason of the breach of trust here in question, for the course of the trust, in the absence of the exercise of unauthorized power by the trustee, can never be known. In such circumstances, the trustee must be deemed to have assumed personal responsibility for such losses as should fall to the holders of the collateral bonds by reason of the securities which were improperly accepted by the trustee and made the basis of issued collateral bonds by reason of the trustee's certificate ultimately producing less in value than the amounts for which they were unlawfully accepted and certified. Although the trust agreement by its terms imposed no responsibility on the trustee for the value of the mortgages to be assigned to the trust fund, when the trustee assumed to accept for the trust fund mortgages not authorized for that purpose by the trust agreement and certified against such securities collateral bonds as issued pursuant to the trust agreement a just regard for the rights of collateral bondholders, who were privileged to rely upon the trustee's certificate, necessarily imposes upon the trustee the measure of liability already stated, in the absence of any possible means of ascertainment whether a loss would have arisen had the trustee performed its plain duties as defined by the trust agreement. That measure of liability alone satisfied the principle that the trustee "acts at his peril" in transcending his powers. A suggestion that had the Ventnor Syndicate made conveyances of lots to dummy vendees and taken purchase-money mortgages and assigned them to the trustee, the letter of the trust agreement would have been satisfied is without force; had the trustee been made acquainted with such procedure the situation would have been unchanged. In this view the trustee must answer to the bondholders for such loss as they ultimately sustain by reason of the mortgages which were made to the trustee realizing less than the amount they were pledged to secure, *Page 460 
unless the immunity clauses of the trust agreement shall be found to exempt the trustee from such liability.
These immunity clauses are as follows:
"It shall be no part of the duties of the trustee to make investigation concerning nor shall it be responsible for the validity, nature or actual value of the bonds and mortgages so assigned to it, nor shall it be answerable except for the due certification as aforesaid of the Company's bonds issued hereunder and for the custody and disposition of the Trust Funds." * * * "The Trustee shall have full discretion as to the time and manner in which it shall proceed for the collection of the amounts secured by the Trust Fund, or the sale of any bonds and mortgages therein, and said Trustee shall not be liable to either the Company or to the bondholders for anything except lack of good faith or ordinary care therein." "That the Trust Fund shall at all times consist of bonds and first mortgages or of bonds and mortgages and cash of a value equal to the par value of the Company's bonds then outstanding, and the Company hereby agrees that upon demand by the Guarantor it will at any time pay into the Trust Fund cash, or assign to the Trustee bonds and first mortgages which shall equal in value any deficiency which may exist, and upon its failure so to do, within a reasonable time to be determined by the Guarantor, the Trustee shall upon the written order of the Guarantor, sell or otherwise dispose of any or all bonds and mortgages in the Trust Fund in such manner as it, the Trustee, shall deem best; and in such event the said Trustee shall not be liable to the Company, the Guarantor or the bondholders for any depreciation of said bonds and mortgages between the time of receiving such orders to sell and the time of sale, or for any other act by it done in the premises in good faith, and with ordinary care."
"That it is further mutually agreed by and between the parties hereto, and it is hereby declared to be a condition upon which the Trustee, and its successor or successors in the trust, hereby created, have assented to these presents and accepted this Trust, that the said Trustee, or its successor or successors, shall not be held responsible for persons employed by it, or them, not being part of its or their staff of officers or employes in its or their office in the city of Atlantic City, provided such persons have been selected with reasonable care, nor shall the Trustee be liable for any mistake of judgment or mistaken exercise of discretion."
The numerous adjudications touching the effect of immunity clauses contained in trust agreements or in testamentary provisions, designed to exempt trustees from liability, have in most instances arisen where the act complained of has been an act within the powers of the trustee, as distinguished from an act without such powers. Tuttle v. Gilmore, 32 N.J. Eq. 611; S.C.,36 N.J. Eq. 617, was a case of the former nature. That trustee had the power to accept securities of the nature of the *Page 461 
securities there in question (second mortgages), but the evidence disclosed that the securities were without substantial value and that no proper effort had been made by the trustee to ascertain that their values were reasonably sufficient to make them "good securities" on which he was to pass his judgment. It was there held that the liability imposed on and accepted by a trustee may be limited by the terms of the instrument creating the trust, but that in construing such clauses the meaning to be attributed to them should be consistent with the purpose and object of the trust, and that a strict rule of construction should be applied as against the claim of restriction. Accordingly, it was held that a clause exempting the trustee from all liability except for willful and intentional breaches of trust could not be understood as protecting the trustee from the loss sustained in the manner already stated. Had the terms of the trust in that case required the trustee to invest only in government bonds, or otherwise denied to the trustee the right to accept mortgage security, it cannot well be doubted that he would have been held liable for the loss, notwithstanding the immunity clause, even though reasonable care had been exercised by him in the ascertainment of the value of mortgages so accepted. It seems to me impossible to doubt that when a trustee transcends his powers by accepting securities for his trust of a nature or class which by the terms of the trust he is not authorized to accept, all inquiries touching his judgment, mistaken exercise of discretion, good faith and the value of the securities so accepted are necessarily excluded from consideration, for the act being in itself contrary to the terms of the trust cannot find justification as within a field of discretion. It accordingly seems impossible to construe an immunity clause as intended to exempt a trustee from liability for transcending his powers as clearly defined by the trust agreement; his engagement is to exercise the powers, and only the powers conferred upon him, and the appropriate office and purpose of an immunity clause forming a part of a trust agreement which specifically and clearly defines the trustee's powers appears to be to limit his responsibility in matters of judgment and discretion committed to him in the execution of those defined powers. No discretion has been conferred upon the trustee in this case as to *Page 462 
the securities it was to receive against which it was to certify bonds. By the terms and spirit of the trust instrument the trustee was required to accept mortgages assigned to it as trustee after such mortgages should have been appraised by the guarantor there named; for the value of such mortgages, so assigned and appraised, the trustee was exempted from responsibility. To construe the immunity clauses as intended to protect the trustee from errors of judgment in accepting for the trust securities of a different class from those explicitly defined by the terms of the trust instrument or in a manner other than the manner specifically set forth by its terms, is to attribute to the immunity clauses not only a purpose to justify the exercise of a discretion by the trustee in a field in which no discretion is designed to be conferred, but also an operative force to nullify the express terms of the trust instrument which define the powers of the trustee antecedent to his certificate, and in that manner to deny to the prospective bondholders the right conferred upon them by the trust agreement to rely upon the certificate of the trustee to the substantial effect that the securities defined in the trust agreement have been assigned to the trustee and appraised in the manner stated in the bonds so issued. In the absence of language of an immunity clause which reasonably discloses a purpose that it shall have such a far-reaching and extraordinary effect, it seems impossible to give it such force. It is this radical and inherent distinction, necessarily existing in all cases, between errors of judgment of a trustee in the management of a trust fund — that is, in acts performed by the trustee which are within the scope of his powers, and acts performed by him which are without or beyond the scope of the powers conferred, that I understand to be recognized in Quick's Executors v. Fisher, supra (at p. 806) of the reported case. Nor does it seem possible to distinguish between an extremely radical departure from the terms of the trust instrument and a departure less radical, so long as the terms of the trust instrument are clear. In Pride v. Fooks, 2 Beav. 430(at p. 432), it appears that the trustee was directed by the terms of a will to invest the trust money in consols. The will exempted the trustee from all losses except those arising from his willful neglect and misconduct. He invested *Page 463 
money in a mortgage on real estate. That act was held to be without the powers of the trustee and was treated as a breach of trust, and the trustee was charged, in behalf of the parties entitled to income, with the amount the consols would have earned. In 1 Perry Trusts, § 460, the well-recognized legal requirement that trustees shall strictly follow the directions of the trust instrument is considered at some length; at the conclusion of the section the author says: "If the trustee go beyond the prescribed limits, neither good faith nor care nor diligence, if they can accompany a departure from the direction of the instrument of trust, will protect them if a loss occurs." As our courts are always open to trustees for protecting advice touching their powers it seems difficult to contemplate any possible source of justification for the exercise of unauthorized powers.
I am impelled to the conclusion that in accepting for the trust mortgages made by the Ventnor Syndicate to the defendant trustee herein, the trustee disregarded the clear letter and spirit of the trust agreement and in consequence of such breach of trust through the exercise of powers not conferred upon the trustee, the trustee has rendered itself liable to the cestuis quetrustent for such losses as may be found to have arisen by reason of such mortgages realizing less than the amounts which they were made to secure; and also that the immunity clauses contained in the instrument of trust are inadequate to exempt the trustee from such liability.
This standard of responsibility renders it impossible to determine at this time the amount for which the trustee must account to the holders of collateral bonds; that can only be accurately ascertained at the final liquidation of the trust. Accordingly the bill must be held open until that time for that purpose.
Should the measure of responsibility here defined be accepted by the trustee, or confirmed on appeal, other charges of liability of the trustee as made in the bill become of little or no importance except in so far as they go to the merits of the prayer of the bill for the trustee's removal.
It is also urged by complainant in support of the relief sought that defendant trustee has been negligent in the performance of its trust duties by permitting the principal and interest to *Page 464 
become in arrears for one year or more on many of the mortgages comprising the trust fund and also in permitting the taxes on much of the land covered by the mortgages to remain unpaid for two or three years, without foreclosing the mortgages or otherwise endeavoring to protect the bondholders.
By the fifth paragraph of the trust agreement the trustee is authorized to collect the mortgages constituting the trust fund by foreclosure or otherwise when interest on such mortgages should be overdue for thirty days or taxes on the mortgaged lands should be unpaid for sixty days after payable, in case the trustee should deem it necessary for the security of the bondholders; and by the tenth paragraph of the trust agreement upon default in payment of principal or interest on the collateral bonds the trustee is directed to foreclose or otherwise realize upon the mortgages constituting the trust fund upon requisition for that purpose made by twenty-five per cent. in value of the outstanding collateral bonds, or upon like requisition by the guarantor of the bonds. No requisition has been made. But complainant urges that under the provisions of the fifth paragraph of the trust agreement the trustee should have foreclosed or otherwise undertaken the collection of the mortgages; that ordinary care and prudence, such as men of common prudence ordinarily exercise in their own affairs, should have prompted such foreclosure; and also urges that this inaction of the trustee has been measurably caused by reason of the fact that some of the directors and officers of the Ventnor Syndicate and West Jersey Mortgage Company were also directors and officers of defendant trustee.
I am convinced that the evidence does not justify an affirmative finding as to either of these contentions, although some doubt exists in my mind whether the inactivity of the trustee in the matters here complained of may not have been measurably occasioned by reason of the presence of conflicting interests of certain managing officers common to the three corporations. The evidence satisfies me that at the time these mortgages first could have been foreclosed and at all times since up to the time the bill was filed, it would have been of more than doubtful benefit to the holders of the collateral bonds to have had the mortgages *Page 465 
foreclosed. The evidence is convincing to the effect that the destruction of the beach front at Ventnor in the winter of 1913, followed by further like injury in 1914, together with other conditions then well recognized, so far unsettled the market values of the several properties covered by the mortgages held in trust by defendant trustee that their foreclosure could not have reasonably been hoped to have accomplished more than a substitution of the land for the mortgages. It also seems clear that no purchasers for the mortgages at a fair price could have been found, and that the Ventnor Syndicate was wholly unable to respond. I am convinced that the officers of the trustee company exercised an honest and reasonably sound judgment in their inaction and cannot be held for such losses as may have occurred, if any, through such inaction, even though the protection afforded by the immunity clauses of the trust agreement should not be invoked by the trustee.
Complainant further urges that defendant trustee collected in its own behalf from the West Jersey Mortgage Company its most valuable securities in such disregard of the interests of the collateral bondholders as to render defendant trustee liable to share with the bondholders, pro rata, the value of the assets so collected.
The evidence touching this claim discloses that on March 5th, 1915, the West Jersey Mortgage Company owed the defendant Guarantee Trust Company, the trustee herein, $54,000. This indebtedness was for money loaned from time to time in the ordinary course of defendant's banking business and for which loans collaterals had been received by the trust company as follows: $42,000 of Young McShea bonds, $4,000 of collateral bonds of the Ventnor Syndicate — bonds of the issue here in question — $44,000 of mortgages of the Ventnor Syndicate on land in the vicinity of and similar to the land covered by the mortgages in the trust fund here in question. The collaterals so held aggregated in face value $90,000. By reason of the unsettled value, already referred to, of the land covered by the $44,000 of mortgages, defendant trust company had for some time been urging the mortgage company to substitute other collaterals in lieu thereof. Shortly prior to March 5th, 1915, an *Page 466 
agreement was consummated as follows: The mortgage company agreed to sell to the trust company the $42,000 of Young McShea bonds then held as collateral by the trust company, and $16,000 additional like bonds, not then pledged, at 95 per cent, of their face value and to apply the proceeds of sale in discharge of the debt. Complainant's charge is that the trustee thus collected the debt due to it and neglected to collect the debt due to the collateral bondholders, its cestuis que trustent, to the injury of the latter. It is also pointed out by complainant that the semi-annual interest payment on the collateral bonds, guaranteed by the mortgage company, had fallen due March 1st, 1915, and had not been paid. The evidence discloses that prior to that time the mortgage company had been regularly paying to the trustee the interest on the collateral bonds. The principal of the collateral bonds was also then due, under the terms of the trust agreement, but the mortgage company was not required to respond to that default until September 1st, 1915. Taxes on much of the mortgaged premises were also in arrears, but the trustee does not appear to have been aware of that fact, and its managing officers do not appear to have known of the interest default of March 1st. I am unable to conclude that in these circumstances the trustee owed any duty to the holders of the collateral bonds which was operative to deny to it the right to collect the money due it in the manner already stated. The debt which was collected was, as already stated, a debt which had arisen in the ordinary course of the banking business of the trustee, and was a debt secured by collaterals which the trust company was by its contract of loan privileged to apply in satisfaction of the debt. By the settlement which was made $42,000 of the collaterals so held were so applied by contract of purchase and $16,000 of unpledged like securities were purchased. The purchase price was the full value of the securities, and at the time of the purchase $48,000 of the pledged securities were released to the debtor. The collateral securities so surrendered to the debtor included mortgages to the amount of $44,000 on the property of the same kind as the mortgages in the trust fund. The securities so released were at that time undesirable securities for a banking institution to hold as collateral; but I do not *Page 467 
think the evidence adequately establishes that the collaterals released were not then reasonably worth as much or more than the $16,000 of bonds which were purchased to effect their surrender to the debtor. I find in the trust agreement no power upon the part of the trustee to enforce at that time against the guarantor of the bonds any default then existing, and am unable to conclude that any trust duty existed upon the part of the trustee which equitably denied to it the right to collect its secured debt in the manner stated.
Complainant also charges that the trustee permitted the Ventnor Syndicate to withdraw from the trust fund a mortgage of $2,000 by surrendering to the trustee for cancellation and retirement collateral bonds which had been theretofore issued for a like amount. The trust agreement authorizes this when there should not be a default; the charge is that at the time there was a default and that the withdrawal was operative to create a preference in favor of the bonds so surrendered as against other like bonds. The mortgage so withdrawn was one of the mortgages which had been made by the Ventnor Syndicate to the trustee. What the amount of loss was, if any, which was suffered by other holders of collateral bonds by reason of the withdrawal, can only be finally determined at the conclusion of the liquidation of the trust; and as the bill is to be held open it seems unnecessary at this time to determine whether there was such a breach of trust in permitting the withdrawal as to impose liability upon the trustee.
Notwithstanding the views already expressed touching the trustee having accepted securities for the trust which were not authorized by the trust agreement, I am unable to reach the conclusion that the trustee should be removed. The trustee is a responsible banking institution and I have found no satisfactory evidence of bad faith on its part in connection with the trust. With the measure of its liability, herein defined, accepted by it, or confirmed on appeal, there can be no doubt touching its efforts to realize on the mortgages in its hands the utmost that can be so realized. The removal of a trustee is a matter directed to the sound discretion of a court; in the absence of bad faith upon the part of a trustee be should not be removed unless some *Page 468 
benefits to the trust can be accomplished by such removal. SeeLathrop v. Smalley Executors, 23 N.J. Eq. 192; McPherson v. Cox,96 U.S. 404; 39 Cyc. 261.
I will advise a degree in conformity with the views herein expressed.
 *Page 81