This is an appeal from a decree of the Essex county orphans court, overruling exceptions to the intermediate account of *Page 229 
the Merchants and Newark Trust Company as trustee under the will of William Riker, Jr. The outcome depends in large part upon the application of the statute which authorizes a trustee in the exercise of good faith and reasonable discretion to continue any investment made by the testator in the stock shares of a corporation. Rev. Stat. 3:16-12.
Mr. Riker died December 3d 1926. His will directed his executor to divide the residuary estate into four parts, and to pay the income severally to testator's four children for life, remainder to their issue. Among the assets which came to the executor's hands were shares of Commercial Casualty Insurance Company stock. The executor allotted five hundred and ninety-eight shares to the trust of which Mrs. Elsie R. Pierce is life cestui and five hundred and ninety-seven shares to the Robert J. Riker trust. In September, 1929, it surrendered this stock in exchange for stock of the Firemen's Insurance Company of Newark — nine shares of Commercial Casualty for ten shares of Firemen's — which it still holds. At that time, the Firemen's had a market value of about $40 a share and Commercial Casualty stock, $44 a share. Shortly the market price of Firemen's began to decline and the decline continued until the price was only $4 or $5 a share. The infant remaindermen, by exception, seek to hold the accountant for the loss.
The exchange made by the trustee was effected in unison with like action of the holders of nearly all the stock of the Casualty Company whereby control of that company was secured by the Firemen's. The Commercial Casualty was and still is engaged in the liability insurance business, while the Firemen's Insurance Company has, for many years, been writing fire insurance. The latter has become also a holding company owning the stock of half a dozen other insurance companies.
Of course, the trustee had no authority to invest the trust funds in the capital stock of the Firemen's Insurance Company. It may have been good business policy to make the exchange, as a step toward immediate sale of the investment, but the trustee's only justification for retaining the Firemen's stock, if it has one, is the statute above mentioned. *Page 230 
 Hewitt v. Hewitt, 113 N.J. Eq. 299, 308, held that trustees empowered by will to retain corporate stocks, which formed part of testatrix' estate, could not properly retain shares received in an exchange like the one now questioned. "The American Power and Light Company [whose stock the trustees acquired by the exchange] owns the controlling interest in many public utility companies besides the Washington Water Power Company and the Montana Power Company [in which testatrix had invested]. The gross earnings of these two companies were about twenty per cent. of the gross earnings of all subsidiaries of the American Power and Light Company in 1929. This may be accepted, for the purpose of illustration, as indicating that the stock of the Montana and Washington companies is twenty per cent. of the assets of the American Power and Light Company. The exact proportion is unimportant. When the trustees made the exchange, in substance they sold four-fifths of their holdings in the Montana and Washington Companies and acquired with the proceeds an interest in other utility corporations the stock of which Mrs. Hewitt did not own at her death. Furthermore, the stock which Mrs. Hewitt owned was in operating public utilities while the trustees have now shares of a holding company. I think it is clear that the trustees are not authorized by the will to retain the stock of the American Power and Light Company."
The statute justifies a trustee who continues to hold corporate shares, only if the investment was one made by the testator. Certainly the investment in stock of the Firemen's Insurance Company was not made by Mr. Riker; it originated with the voluntary action of the trustee, the exchange of one block of stock for the other. Retention of the Firemen's shares was not authorized by the statute. The exceptions of the infants should have been sustained and the trustee charged with the value which the Commercial Casualty stock had when surrendered.
A more difficult problem arises in respect to stock in the Merchants and Manufacturers National Bank which testator held at his death. *Page 231 
In March, 1927, pursuant to act of Congress and to the New Jersey statute (Rev. Stat. 17:4-18), the bank dissolved as a national banking association and reorganized as a trust company of this state. The executor assented to the conversion and received stock in the new company in exchange for the stock which testator had owned. The following August, the trust company and another institution, the Newark Trust Company, merged and took the name Merchants and Newark Trust Company. Rev. Stat. 17:4-80,c. The trustee accepted and still retains the shares of the consolidated company. Of these shares, two hundred and eight have been allotted to each trust. They have greatly declined in value. Mrs. Pierce and Mrs. Edith R. Kemp, two of the life tenants, Mrs. Pierce's children and Robert J. Riker, Jr., infant remaindermen of two of the trusts, except.
If a trustee holds shares of a corporation which he can properly retain, and the corporation is merged or reorganized into a new corporation, the trustee can properly receive and retain new shares issued in exchange for the old, but only if the new shares are substantially equivalent to the old. The difficulty arises in determining whether the new shares are substantially equivalent to the old. As was said by Cardozo, C.J., in one of the cases cited below: "Here, as elsewhere, distinctions of degree may mark the boundary between right and wrong." The determining factor is the substance of the transaction rather than its form.
Ballantine v. Young, 79 N.J. Eq. 70; Restatement: Trusts§ 231F; In re Smith (1902), 2 Ch. 667; In re Anson'sSettlement (1907), 2 Ch. 424; Moeller v. English
(Conn.), 173 Atl. Rep. 329; 93 A.L.R. 1513; Old Colony TrustCo. v. Shaw (Mass.), 158 N.E. Rep. 531; Anderson v. Bean
(Mass.), 172 N.E. Rep. 647; 72 A.L.R. 939; Mertz v. GuarantyTrust Co. (N.Y.), 159 N.E. Rep. 898; 57 A.L.R. 1114; In reTower's Est. (Pa.), 96 Atl. Rep. 576; In re Macfarlane'sEst. (Pa.), 177 Atl. Rep. 12; In re Scott's Trust (Pa.),184 Atl. Rep. 245; Bass v. Adams (S.C.),161 S.E. Rep. 687. The principles that governed New Jersey Midland RailwayCo. v. Strait, 33 N.J. Law 322; Collings *Page 232 
v. Allen, 90 N.J. Law 5; affirmed, per curiam, 91 N.J. Law 322,
and Colgate v. U.S. Leather Co., 75 N.J. Eq. 229, are not applicable to the present case.
Under the statutes in force in 1927, the powers of a trust company were somewhat larger than those of a national bank. A trust company, subject to limitations, might invest its funds in corporate stocks; it could issue and guarantee participations in mortgages. A national banking association could not. Because of the wider powers, an investment in trust company shares was slightly different in character from an investment in national bank shares, and perhaps a trifle more hazardous. On the other hand, the trust company stockholder has not the liability for the company's debts like that which rests on a national bank stockholder. When the trustee accepted shares in the trust company in exchange for shares in the national bank, the only immediate change in the investment was that which resulted from the difference in the powers and the supervision of the two institutions. The same business was continued at the old stand, by the same personnel.
A further alteration in the investment took place upon the merger of the two trust companies. Of the companies, the Merchants was the larger and its stockholders received two-thirds of the stock of the consolidated company, while the stockholders of the Newark Trust Company took the other third. Thereby the trustee became interested in the business which had formerly been conducted by the Newark Trust Company, but that was a business of the same nature and carried on in the same municipality as the business theretofore conducted by the bank in which testator had owned shares. In substance, that bank merely acquired considerable new business, new depositors, borrowers, investments and stockholders. True, the trustee's proportionate interest in the enterprise was reduced one-third, but such a reduction could properly have been produced in the absence of a merger by the sale of part of the stock which testator left.
In my opinion, the shares of the Merchants and Newark Trust Company received by the trustee are substantially *Page 233 
equivalent to the old shares held by testator and could properly be retained by the trustee under the same condition as the old shares, that is, so long as justified by good faith and reasonable discretion.
Let it not be understood that every case of conversion of a national bank into a trust company and merger of the latter with another trust company, would lead to the same conclusion. An investment in the shares of the consolidated company might be essentially different from the original investment. The circumstances of the particular case determine the result.
Another complication arises from the fact that the Merchants and Manufacturers National Bank was the executor and trustee under the will of Mr. Riker, qualified as such, and its successor institutions have acted throughout as executor and trustee, assuming that power by virtue of the statute. Does this fact bring the case within the condemnation of the principle that a trustee must be disinterested? Estate of Bernard Shanley v.Fidelity Union Trust Co., 108 N.J. Eq. 564.
It is plain that if the trust company had had on hand treasury stock and had sold it to itself as trustee, the sale would have been voidable. Likewise, if the subject of the sale had been stock in another corporation, provided the shares were owned by the trust company. McAllister v. McAllister, 120 N.J. Eq. 407;121 N.J. Eq. 264. But the transactions under review were not sales and cannot be judged by the rules applicable to sales. When the directors set in motion the reorganization as a trust company and later the merger, they determined in effect that the contemplated changes would be advantageous to the stockholders. In making their decision, they were acting as fiduciaries for the stockholders, for the appellants as well as all others. Two-thirds in amount of the stockholders approved — acting each to advance his own interests. (I am not informed whether the company, as trustee, voted for either the reorganization or the merger.) Then the directors, or the trust committee, were confronted with the question whether the Riker trusts *Page 234 
should accept the new stock or demand in cash the value of the shares. They decided to take the shares, since market value was far above asset value. In all this, no conflict of interests, no divided allegiance appears.
But appellants say that if the large block of Riker stock had been offered for sale, the market price would have fallen and control of the bank might have passed into new hands, and that this has been a factor continually influencing the trust company not to sell. A corporation as an institution is not usually concerned with the market price or the ownership of its shares; the stockholders as individuals are. Now if the trustee in this case had been a natural person, who happened to own many shares in the Merchants and Manufacturers National Bank, his individual interest might have affected his conduct as trustee, but no presumption of bad faith could be drawn from his ownership of the shares. Similarly with the officers and directors of our trustee; they all held stock in their company and probably liked the quoted prices to be high, and they were interested in being re-elected to office. But there is not a shred of proof that in management of the Riker estate, they were influenced by such considerations, or were anywise false to their trust; and in the absence of proof, bad faith cannot be imputed to them or to the corporation which they served.
Appellants charge negligence in the retention of the bank stock and of other shares during a prolonged declining market. I have carefully studied the proofs and agree with the orphans court that the accountant exercised due care. Appellants also point out that the will named the national bank as executor and trustee; that the accountant was never appointed to these offices by any court; they argue that the statute (Rev. Stat. 17:4-20) which authorizes the trust company, as successor of the national bank, to continue as trustee, is unconstitutional. I find it unnecessary to pass on the question, as I am satisfied that the liability of the accountant is the same whether or not the statute is valid.
The decree will be affirmed except in respect to the Firemen's Insurance Company stock. *Page 235