[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 91 
James W. Bailey, of Haddonfield, died in March, 1926, leaving a will in which the First National *Page 92 
State Bank of Camden was named trustee of his residuary estate. Not long after Mr. Bailey's death, the bank and another financial institution, the Camden National Bank, merged into the First Camden National Bank and Trust Company, and the Trust Company has been administering the residuary estate as trustee under the will. Its first intermediate account was allowed by the Camden County Orphans' Court in 1939. Some years later, on petition of infant beneficiaries, the County Court opened the decree and permitted exceptions to be filed. The court has now overruled the exceptions save for one minor item, and the infants, by their guardians ad litem appeal.
 I.
In the summer of 1927, the executors were considering a loan of $25,000 on mortgage covering property in Ocean City, New Jersey. But as they would shortly be turning over the estate to the Trust Company, they consulted that company before making the loan. Mr. Ambruster, trust officer of the Trust Company, suggested that a certain real estate broker, Mr. Brick, make an appraisal of the property. Mr. Brick made the appraisal, reporting in a letter addressed, however, to a Mr. Fox, the agent of the borrower. Upon Mr. Brick's appraisal and an inspection by one of the executors, Mr. Hilliard, the loan was granted. By arrangement between the executors and the trustee, the bond and mortgage ran directly to the latter. The appellants except to the loan on the ground that the trustee failed to obtain an independent appraisal but relied on the mortgagor for the appraisal. They argue that Mr. Brick appraised the property for the mortgagor and not for the trustee, inasmuch as his report was addressed to Mr. Fox and not to the trustee. But the proofs are to the contrary and so this exception was properly overruled.
The next exception relates to mortgages on property in Camden. About the time these mortgages were made, a local improvement, namely, a new pavement in front of the mortgaged premises, was completed, but the assessment was *Page 93 
not confirmed until six months later. The assessment, or such part as the owner did not pay himself, the trustee paid with moneys of the trust estate. The County Court sustained the exception to the extent of requiring the trustee to reimburse the estate for the amount so expended, $126. But the appellants are not satisfied. They argue that because of the improvement, the mortgage was not a first lien and that the trustee should be held liable for the entire loss that resulted from this investment. Actually, the mortgage was a first lien, since the improvement assessment did not become a lien until confirmed. Irvington v.Ollemar, 128 N.J. Eq. 402; affirmed, 131 Id. 189 (1942). The decree provides full compensation to the estate for any negligence of the trustee in respect to these mortgages.
 II.
Three exceptions object to the trustee's retention of certain investments that testator owned at the time of his death. The question of the trustee's liability for the resulting loss is affected by the Sixth paragraph of Mr. Bailey's will:
"My said executors and my said trustees or trustee, are hereby vested with full power, authority and discretion with reference to holding or selling or transferring such stocks, bonds and other securities as may belong to me or in which I may have any interest, at the time of my death and I specifically direct that my said executors and trustees or trustee, shall be under no responsibility by reason of their decision either to hold or to sell any of such stocks or bonds or interests therein. This clause in my said will is, by me, therein placed because I desire that my said executors and trustees or trustee, may not be in any way embarrassed in their efforts to conserve my said estate."
Provisions in trust instruments restricting the liability of trustees have been considered by our courts on several occasions. The general rule was stated in the leading case of Tuttle v.Gilmore, 36 N.J. Eq. 617 (E. A. 1883). "In my judgment it is clear, both from principle and authority, that the liability imposed on and accepted by a trustee may be limited by the terms of the instrument creating the trust. If there is such a clause of limitation, the rule for measuring *Page 94 
the trustee's liability is to be sought in that clause properly construed. In construing such a clause, the meaning to be attributed to it should be consistent with the purpose and object of the trust, and a strict rule of construction should be applied as against the claim of restriction. But if, when so construed, a limitation on the liability of the trustee was clearly intended, the trustee is entitled to the benefit of it."
A valuable discussion of the rule by the late Vice-Chancellor Leaming may be found in Conover v. Guarantee Trust Co.,88 N.J. Eq. 450, at 460; affirmed, 89 Id. 585 (1918). See, also,In re Leupp, 108 N.J. Eq. 49, at 60 (Lewis, V.C. 1931);Woodruff v. Freehold Trust Co., 112 N.J. Eq. 405; affirmed,116 Id. 597 (1934); Liberty Title, etc., Co. v. Plews,142 N.J. Eq. 493 (Haneman, V.C. 1948); Restatement — Trusts, § 222. In the case before us, the trustee is not charged with bad faith. The nature of the charges may be illustrated by one of the investments — $5,000 par value of bonds of the Raleigh 
Charleston Railroad, guaranteed by the Seaboard Air Line Railway. When the trustee received the bonds from the executor in September, 1927, the market quotation was about 70. A year later, the price had declined to 60; earnings of the guarantor company were unsatisfactory and the trustee resolved to sell the bonds. But before a sale was effected came word that the condition of the Seaboard Air Line was improving and the trustee decided to defer selling. However, the price of the bonds continued to decline, and receivers were appointed for both railroad companies at the end of 1930. No interest was paid thereafter. Eventually, in 1944, the trustee received $1,445 in final settlement of principal and interest. Meanwhile, the Trust Investment Committee of the trustee had considered these bonds about every eight months, on the average, but each time had taken no action toward getting rid of them. The appellants argue that the trustee's retention of the bonds constituted a speculation, and shows a failure to exercise reasonable care and prudence. Viewing the matter in a light most favorable to the infants, this would be a borderline case in the absence of the immunity clause. It presents just the situation that we believe the testator *Page 95 
intended to provide for when he directed that the "trustee shall be under no responsibility by reason of their decision either to hold or to sell." There was no error in overruling the exceptions that relate to securities which testator held at his death.
 III.
The last problem relates to shares of stock in the First Camden National Bank and Trust Company itself. As we have already mentioned, this company was created in 1927 by a merger of the Camden National Bank and the First National State Bank of Camden. Since testator owned stock in each of the last two banks, the question arises whether the clause in the will authorizing the trustee in its discretion to hold stocks which belonged to testator at the time of his death, justified the retention of the shares in the First Camden.
"If a trustee holds shares of a corporation which he can properly retain, and the corporation is merged or reorganized into a new corporation, the trustee can properly receive and retain new shares issued in exchange for the old, but only if the new shares are substantially equivalent to the old." In reRiker, 124 N.J. Eq. 228; affirmed, 125 Id. 349 (1939). See, also, Hewitt v. Hewitt, 113 N.J. Eq. 299 (Ch. 1933), andCamden Trust Co. v. Du Bois, 136 N.J. Eq. 317 (Ch. 1945).
The Camden National Bank was a comparatively small company with capital of $100,000 and surplus and undivided profits of $695,000, using the figures on which the merger was based. Testator was the owner of 75 shares of the bank having a book value of $59,625 and representing 7 1/2% of the entire capital. The bank's main office was in the southerly part of Camden and its only branch was at Second and Walnut Streets, Philadelphia. It did no trust business. Mr. Bailey's interest in the First National State Bank was inconsiderable compared with his investment in the Camden National — 15 shares with a book value of $3,975. This bank, however, had more than three times the net assets of the other, $2,650,000. It had a branch in downtown Philadelphia, near the branch of *Page 96 
the Camden National, but whether it had other branch offices does not appear. It also operated a trust department. The institution formed by the merger issued 13,000 shares of capital stock of which 3,000 were allotted to the stockholders of the Camden National on the basis of 3 for 1, and 10,000 were issued to stockholders of the First National on a share for share basis. The trustee received altogether 240 shares, of which it promptly sold 100 shares for $42,500, and retained the other 140 shares until 1940, when it sold them at $12 a share, or $1,680 for the lot.
Shares in the First Camden National Bank and Trust Company can be considered as substantially the same security as shares in its predecessor, the First National State Bank. By the merger with the Camden National Bank, the larger banking company acquired a branch in south Camden, for the main office of the Camden National became such a branch. Capital surplus and undivided profits were increased by 30 per cent., so that the combined institution was the largest bank in south Jersey. Doubtless much new business was obtained. New stockholders were added; a place was made on the board for the directors of the Camden National and the officers and employees of the latter were taken care of in one way or another. But if the new institution was substantially the same as the First National State Bank, obviously it is not substantially the same as the Camden National Bank, the institution in which testator had a large investment. That bank became, in effect, merely a branch of the other bank. There are doubtless situations where an investor considers shares in two corporations as a unit and where, upon their merger, stock in the new corporation is practically the same as what he held before. If Mr. Bailey had owned two per cent. of the stock of each of the banks, it might perhaps be said that two per cent. of the stock of the Trust Company could be regarded as the equivalent. But that would have been very different from the actual situation. The question before us can only be answered by treating testator's bank investments separately. The trustee was not authorized to keep the stock of the First Camden National Bank received in *Page 97 
exchange for shares in the Camden National Bank, but might, in its discretion, hold the 15 shares received for the First National shares.
The 100 shares of the First Camden National Bank and Trust Company, sold by the trustee in 1927, should be considered to be shares received in exchange for stock of the Camden National Bank, that the trustee was not authorized to retain. Of the other 140 shares, 15 will be taken as shares representing testator's interest in the First National State Bank that the trustee might, in its discretion, hold. The immunity clause in the will protects the trustee as to these 15 shares. The remaining 125 shares must be regarded as shares obtained for stock in the Camden National. These the trustee should have sold forthwith. The lowest price at which stock in the First Camden National Bank and Trust Company sold in 1927 or 1928 was $425 a share. The trustee is liable at that rate, less the $12 a share that it actually received. To this extent, the County Court should have sustained the exceptions relating to this stock. The judgment will therefore be reversed.