9 N.J. Super. 308 (1950)
74 A.2d 360
FIDELITY UNION TRUST COMPANY, AS TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF GEORGE J. CORY, DECEASED, PLAINTIFF,
v.
CLARA A. CORY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 20, 1950.
*309 Messrs. Riker, Emery & Danzig (Mr. Charles Danzig, appearing), attorneys for all plaintiffs excepting Grant Titsworth, et al.
*310 Mr. J. Albert Homan, guardian ad litem for infant defendants.
Messrs. Whiting & Moore (Mr. Borden D. Whiting appearing), attorneys for Grant Titsworth, et al., plaintiffs.
Mr. Furney Jeffreys, guardian ad litem for infant defendants.
Mr. John C. Howe, attorney for defendant Society for the Relief of Respectable Aged Women.
Messrs. Pitney, Hardin & Ward (Mr. Waldron M. Ward appearing), attorneys for defendant Hospital of Saint Barnabas and For Women and Children.
Messrs. McCarter, English & Studer (Mr. Woodruff J. English appearing), attorneys for defendant the Presbyterian Hospital of Newark.
STEIN, J.S.C.
Pursuant to an order of consolidation entered on March 31, 1950, the above entitled cause of action and the actions known as Fidelity v. Beach, docket C-1923-48, Fidelity v. Knox, docket C-256-49, Fidelity v. Noland, docket C-1937-48, Fidelity v. Schneider, docket C-2202-48, Fidelity v. Young, docket C-1930-48, and Titsworth v. Blair, docket C-2027-48, all of which cases involve common questions of law and fact, were ordered to be tried jointly.
The matter before the Court for decision is whether the shares of stock of Public Service Electric and Gas Company ("Electric and Gas") received by the respective plaintiff trustees on or after July 1, 1948, the effective date of the Final Amended Plan dated December 29, 1947, for the dissolution of Public Service Corporation of New Jersey pursuant to Section 11 (e) of the Public Utility Holding Company Act of 1935 ("the Plan") are substantially equivalent to the shares of Public Service Corporation of New Jersey ("the Corporation") formerly *311 held in the respective trust accounts. Schedule A which forms a part of this opinion is supported by the evidence and documentary proofs and shows the shares of stock formerly held and those now held, and the differences and similarities between cumulative preferred stock of Public Service Corporation and the new preference common stock of Public Service Electric and Gas Company distributed to the holders of cumulative preferred stock of Public Service Corporation of New Jersey.
The abbreviations used herein are those adopted in the Plan and in some instances those adopted in the "Findings, Opinion and Orders of the Securities and Exchange Commission dated December 30, 1947, and February 26, 1948, approving the Final Amended Plan dated December 29, 1947, for the dissolution of Public Service Corporation of New Jersey pursuant to Section 11(e) of the Public Utility Holding Company Act of 1935," this latter being herein referred to as "S.E.C. Findings."
In each case before the Court the shares of stock of the Corporation (whether 8%, 7% or 6% cumulative preferred stock or common stock) were retained by the executors or trustees under an authority expressly granted to retain investments held by the decedent, or under the statutory authority to retain granted by R.S. 3:16-12. If it be determined by the Court that the shares of Electric and Gas received on the exchange are substantially the equivalent of the shares of the Corporation formerly held, then the shares of Electric and Gas now held may continue to be retained and it will be unnecessary to consider the special language of any of the wills in question.
The new stock was received pursuant to a Plan for the dissolution of the Corporation which was approved by order of the United States District Court for the District of New Jersey dated March 19, 1948, in a proceeding brought by the Securities and Exchange Commission under the Public Utility Holding Company Act of 1935.
*312 The following is a summary of the Plan:
"(1) the exchange of unsecured 50 year 6% Debenture Bonds of Electric and Gas, in equal face amount, for the outstanding 6% Perpetual Interest-Bearing Certificates of the Corporation held by the public;
"(2) the redemption by Electric and Gas of its $5 Cumulative Preferred Stock held by the public, the cancellation of its $5 and 7% Cumulative Preferred Stock not held by the public, and the reclassification of its Common Stock (its only other class of stock outstanding) into 6,062,767 shares of $1.40 Dividend Preference Common Stock and 5,503,193 shares of Common Stock;
"(3) the exchange of $1.40 Dividend Preference Common Stock of Electric and Gas for the outstanding Preferred Stock of the Corporation in the respective ratios of 4.7, 4.15, 3.7, and 3.25 shares of Dividend Preference Common Stock for each share of 8%, 7%, 6%, and $5 Preferred Stock of the Corporation, respectively, and the exchange of 5,503,193 shares of Common Stock of Electric and Gas and 550,319 shares of Common Stock of South Jersey Gas Company for the outstanding 5,503,193 shares of Common Stock of the Corporation;
"(4) the sale or other disposition of the stock of County Gas Company owned by the Corporation; and
"(5) the dissolution of the Corporation.
"The indebtedness of Electric and Gas and of Transport presently outstanding in the hands of the public will not be affected by the Plan."
It is settled law in this State that where stock is retained under a testator's authorization permitting the retention of property owned by him, or where stock is retained under the authority of R.S. 3:16-12, new stock into which such investment may be converted as a result of merger, reorganization or other cause may be retained if the new stock is the equivalent or substantially the equivalent of the old. In re Riker (1938), 124 N.J. Eq. 228; affirmed, 125 N.J. Eq. 349; Camden Trust Co. v. DuBois (1945), 136 N.J. Eq. 317; Brown v. Fidelity Union Trust Co. (1944), 135 N.J. Eq. 404; Ballantine v. Young (1911), 79 N.J. Eq. 70; Farr v. First Camden Nat. Bank and Trust Co. (1949), 4 N.J. Super. 89.
*313 The test to be applied is set forth in the Riker case as follows (p. 231):
"If a trustee holds shares of a corporation which he can properly retain, and the corporation is merged or reorganized into a new corporation, the trustee can properly receive and retain new shares issued in exchange for the old, but only if the new shares are substantially equivalent to the old. The difficulty arises in determining whether the new shares are substantially equivalent to the old. As was said by Cardozo, C.J., in one of the cases cited below: `Here, as elsewhere, distinctions of degree may mark the boundary between right and wrong.' The determining factor is the substance of the transaction rather than its form."
Every case must be considered on its merits to determine whether the investment is the same or substantially the same.
In the Riker case, supra, testator had owned stock of Merchants and Manufacturers National Bank, which after his death had been dissolved as a national banking association and reorganized as a New Jersey trust company. A few months later the trust company and another institution, the Newark Trust Company, merged, taking the name Merchants and Newark Trust Company. The court held that the shares of the latter were substantially equivalent to the shares originally owned by the testator at his death. The court recognized that the powers of a trust company were broader than those of a national bank; that the trust company might invest in corporate stocks and could issue and guarantee participations in mortgages where a national banking association could not. Because of these differences the investment in trust company shares was "slightly different in character from an investment in national bank shares and perhaps a trifle more hazardous." But the court stated that "The same business was continued at the old stand by the same personnel" and that despite the differences the shares were substantially equivalent, and pointed out that even after the subsequent merger of the two trust companies, which caused a further alteration, the business was of the same nature and carried on in the same municipality.
*314 However, a different conclusion was reached by the court in that case with respect to shares of Commercial Casualty Insurance Company stock which had been surrendered in exchange for stock of the Firemens Insurance Company of Newark. The Commercial Casualty had been and continued to be engaged in the liability insurance business, while the Firemens Insurance Company had for many years written fire insurance and became also a holding company, owning the stock of Commercial Casualty and a half a dozen other insurance companies, and so the court concluded that the retention of the stock was not authorized by the statute R.S. 3:16-12.
In the Camden Trust Company case, supra, common stock of a closely held corporation had been owned by the testator and on a reorganization the estate received preferred stock for part of its investment, and these latter shares were held substantially equivalent to the common stock shares. There the court pointed out that the new stock would have better investment qualities and "thus will better serve the purpose for which the balance of the trust is being administered."
In Hewitt v. Hewitt (1931), 113 N.J. Eq. 299, testatrix had owned 108 shares of Washington Water Power Company and 125 shares of Montana Power Company which had been exchanged for 87 shares of the preferred stock of American Power and Light Company, a large public utility holding company which owned a controlling interest in many utilities. The gross earnings of the two corporations in which testatrix held stock were only 20% of the gross earnings of all subsidiaries of American Power and Light Company and the new shares were in a holding company whereas the old shares were in operating companies. The court there concluded there was no authority to retain the new shares.
In Brown v. Fidelity Union Trust Co., supra, the testator had owned shares of stock in Financial and Industrial Corporation which, after the testator's death, merged into Goldman-Sachs Trading Corporation. The executors accepted stock *315 in the latter company. Both corporations were investment trusts holding much the same shares of stock and were practically equal to each other in value. The staffs of both organizations were retained. The banking house of Goldman-Sachs & Co. had a contract with Goldman-Sachs Trading Corporation (which continued in effect after the merger) under which the banking house decided on the changes in investments to be made in the portfolio of the Trading Corporation. While the court there said that the new shares bore a strong resemblance to the old, yet it concluded they were not substantially equivalent.
In In re Freed's Estate (1947), 71 N.Y.S.2d 304, the testator had owned virtually all the stock of First Atlantic Corp. (Del.), which in turn owned all the stock of First Atlantic Corp. (N.Y.). These two corporations and testator owned approximately 80% of the stock of Paramount Motors Corp. Both the Atlantic corporations were dissolved after testator's death and their assets, including the Paramount shares, were distributed to their stockholders, including testator's estate. It was held that there was no substantial difference between the stock now held and the stock left by the deceased, the only difference being that the estate now held the stock of Paramount in its own right instead of through the holding company.
In considering the points of sameness and the differences between the stocks of Electric and Gas now held and the stocks of the Corporation formerly held, as brought out hereinafter herein and in Schedule B, and in applying the principles and precedents established in the above cases, it is concluded that the new shares of Electric and Gas (both dividend preference and common stock) are substantially equivalent to the old shares of the Corporation for which they were received in exchange. The Riker case shows that the court may go far in sustaining equivalency when the business is the same and is carried on by the same personnel at the same place, and points strongly in favor of equivalency on the Electric and Gas facts.
*316 In considering the equivalency of the stocks now held to those formerly held, it is to be observed that the two companies (Electric and Gas as compared with the Corporation) are substantially the same. The same utility system with minor exceptions which was under the control of the Corporation is now under the control of and operated by Electric and Gas. The sources and prospects of income are in each case the same; business is carried on "at the old stand" and with the same personnel.
Schedule A attached as part of this opinion shows the similarities and differences between the dividend preference stock of Electric and Gas and the preferred stocks of the Corporation and reference is now made to that schedule.
Electric and Gas is an operating company and at the same time it is a holding company in that it holds all the stock of Transport. The Corporation was a holding company but through its control of Electric and Gas it was able to and did participate directly in operating functions, for the employees of the Corporation with but minor exceptions were also employees of Electric and Gas. It is therefore concluded that there is equivalency in this respect.
There is a dictum in Hewitt v. Hewitt, supra, that where the new stock is in a holding company whereas the stock formerly held was in an operating company "substantial equivalency" may perhaps be lacking. But that is the inverse of the situation here. Moreover the facts in the Hewitt case were very strongly against equivalency entirely apart from this point.
The several intra-system transfers and cancellations of securities and the accounting entries involving total write-offs of approximately $100,000,000 can be dismissed as of no consequence on the issues before the Court. All the companies, both parent and subsidiary, were solvent before and after the adoption of the Plan and their business and prospects of earnings, when viewed collectively, continue to be the same. Electric and Gas continued to own the same assets and the same *317 physical properties, with minor exceptions. The sale of County Gas, a minor part of the whole, may be disregarded as the sale might have been made had the Plan not been adopted. The stocks were not callable. Another difference is that the old preferred stocks had a priority in the event of liquidation which is not true of the new dividend preference stock, but it is submitted that the question of liquidation may reasonably be put aside in this case by reason of its unlikelihood with the utility system with which we are here concerned. Again, the $8 preferred stock had certain pre-emptive rights on the issuance of new stock which have now disappeared; but pre-emptive rights today are not regarded as of such importance as during earlier years (S.E.C. Findings, p. 35). It is particularly to be noted that for every feature of the preferred stocks that was dropped there was added some other benefit; and while these changes do result in differences, the differences either singly or in the aggregate are not substantial.
As pointed out in Camden Trust Co. v. DuBois, supra, the variances in the new dividend preference stock as compared to the old preferred stock are not a basis for finding an absence of equivalency, for in that case the court held that preferred stock could be equivalent to common stock. In considering the variances between the old preferred stocks and the new dividend preference stock the Court takes into consideration the fact that the dissolution of the Corporation was brought about under governmental compulsion by reason of the Public Utility Holding Company Act of 1935. No such factor was present in any of the New Jersey cases cited. This is not a case of investors or management devising a new corporate set-up; it is a revamping of the capital structure to conform to a statutory public policy regarding utilities, over which the companies and their stockholders had no control.
The differences between the common stock of Electric and Gas compared to the common stock of the Corporation are set forth in Schedule B and reference is made to that schedule.
No new interests have been introduced ahead of the former *318 common stockholders of the Corporation, for as pointed out herein, the holders of the dividend preference stock have taken the place of the former holders of the preferred stock of the Corporation and the holders of the debentures have taken the place of the former holders of the perpetuals of the Corporation. The facts show that the two corporations are really the same. Even though the voting positions of the respective classes of stock have been somewhat shifted by the Plan, the voting power of the former preferred stockholders of the Corporation having been advanced from 23% to 52% (S.E.C. Findings, p. 34), this diminution in voting effect of each share of the new common stock does not affect in any material degree the question of substantial equivalency.
A privilege to convert into common stock has been granted to the dividend preference stock, but it might be said that the removal of the preference on liquidation which the preferred stockholders formerly held offsets this; and moreover in the event the conversion rights are exercised there is removed this preferential claim on dividends. Here again the variances do not cause a difference of substance either singly or in the aggregate. I find, therefore, that each share of the common stock of Electric and Gas is the equivalent or substantially the equivalent of each share of common stock of the Corporation.
Finally a trustee is held to a strict standard and is required to exercise an independent and impartial judgment; and when the trustee, by reason of conflicting interests, is unable to exercise this independent and impartial judgment it is appropriate and necessary that he should ask instructions of the Court. Shanley v. Fidelity Union Trust Co. (1927), 108 N.J. Eq. 564. See Scott on Trusts, §§ 170.11, 170.25.
It appears that two of the directors of plaintiff Fidelity Union Trust Company (one of whom is president of the trust company) out of a total of twenty-four directors are directors of Electric and Gas, which has a total of fifteen directors. In addition Fidelity Union Trust Company in its individual capacity owns substantial amounts of the stocks and securities *319 of Electric and Gas and in various other fiduciary capacities owns additional substantial amounts of the stocks and securities of Electric and Gas. It is Registrar for the common stock, dividend preference common stock, 4.08% preferred stock and other stocks of Public Service Electric and Gas Company and is Trustee under the August 1, 1924, mortgage of Public Service Electric and Gas Company (first and refunding mortgage), under which are issued various series of bonds, and is Registrar, Transfer Agent and Interest Paying Agent for the registered bonds under this mortgage and Coupon Paying Agent for all the series of bonds under this mortgage and is Trustee under Public Service Coordinated Transport first and refunding mortgage dated January 1, 1940, and is a Depositary of funds of Public Service Electric and Gas Company and subsidiaries.
These facts were brought to the attention of the beneficiaries and the Court so that the beneficiaries and the Court may make an independent determination of the bearing of these facts on the issues before the Court. None of these factors, singly or in the aggregate, can be said as a matter of fact or of law to affect or call in question the independence or impartiality of judgment of the plaintiff trustee, in determining what action should be taken in regard to Electric and Gas holdings, and does not involve any element of self-dealing.
It is concluded that the shares of Electric and Gas received on the exchange are the substantial equivalent of the shares formerly held and that they may be retained as a part of the investments of the respective trust accounts.
Judgment in accordance with the foregoing.

*320
 SCHEDULE A
 COMPARISON OF THE OLD PREFERRED STOCKS OF PUBLIC SERVICE CORPORATION
 OF NEW JERSEY WITH THE NEW DIVIDEND PREFERENCE COMMON STOCK OF
 PUBLIC SERVICE ELECTRIC AND GAS COMPANY
----------------------------------------------------------------------------
 8% 7% 6%
 Cumulative Cumulative Cumulative
 Preferred Preferred Preferred
 Stock Stock Stock
----------------------------------------------------------------------------
Par value $100 $100 $100
Rates of exchange 4.70 new shs. Pref. Com. 4.15 3.70
under Plan stock
Callable No No No
Amount receivable 164.50 145.35 129.50
if new Pref. Com.
stock were called
after 12 years
Dividends All four series of preferred same same
 stock entitled to cumulative
 dividends upon an equal and
 ratable basis at their
 respective rates before
 dividends payable on the common
 stock.
----------------------------------------------------------------------------
 $5 The New
 Cumulative Preference
 Preferred Common
 Stock Stock
----------------------------------------------------------------------------
Par value No par No par
Rates of exchange 3.25 -
under Plan
Callable No After 12 yrs. Electric and Gas
 may recall at $35 per sh. plus
 accrued dividends.
Amount receivable 113.75 -
if new Pref. Com.
stock were called
after 12 years
Dividends same Limited to cumulative dividends
 of $1.40 per sh. per annum.
 Entitled to preference over
 common stock in respect of such
 dividends.

*321
----------------------------------------------------------------------------
 8% 7% 6%
 Cumulative Cumulative Cumulative
 Preferred Preferred Preferred
 Stock Stock Stock
----------------------------------------------------------------------------
Conversion No conversion privileges same same
Preference on On liquidation, shares of same same
liquidation prepered stock entitled upon
 an equal and ratable basis to
 $100 per sh. plus all accrued
 dividends.
Voting rights 1 vote per sh. at all same same
 meetings of stockholders
Proportionate extent Preferred stock entitled to same same
of voting power exercise 22.74% of the voting
 power in Public Service
 Corporation of New Jersey.
Cumulative voting in
respect to directors
----------------------------------------------------------------------------
 $5 The New
 Cumulative Preference
 Preferred Common
 Stock Stock
----------------------------------------------------------------------------
Conversion same Privilege for 3 yrs. of
 converting into 1.1 shs. of com.
 stock; next 3 yrs. into 1 sh.
 com. stock; next 3 yrs. into 7/8
 sh. of com. stock; next 3 yrs.
 into 3/4 sh. of com. stock.
Preference on same No preference on liquidation
liquidation
Voting rights same Same voting rights as holders
 of common stock.
Proportionate extent same Under the Plan the preference
of voting power common stock is entitled to
 exercise 52% of the voting power
 in Electric and Gas.
Cumulative voting in
respect to directors Yes

*322
----------------------------------------------------------------------------
 8% 7% 6%
 Cumulative Cumulative Cumulative
 Preferred Preferred Preferred
 Stock Stock Stock
----------------------------------------------------------------------------
Decision as to Under N.J. Statutes, same same
dissolution affirmative vote of 2/3 of
 all the outstanding capital
 stock, without distinction as
 to class, required to effect
 a liquidation.
Issuance of other
preferred stock
Issuance of Pre-emptive rights, together No No
additional shares of with common stockholders,
common stock to purchase additional shares
 of common stock which may
 be issued.
----------------------------------------------------------------------------
 $5 The New
 Cumulative Preference
 Preferred Common
 Stock Stock
----------------------------------------------------------------------------
Decision as to same Elecric and Gas may not be
dissolution voluntarily liquidated or
 dissolved (otherwise than by
 merger or consolidation)
 without consent of a majority
 of outstanding shares of
 preference common.
Issuance of other With insignificant exceptions
preferred stock Electric and Gas may not (in the
 absence of certain specified
 amounts of earnings) issue
 preferred stock senior to the
 preference common without the
 consent of the holders of at
 least 2/3 of the outstanding
 preference common shares.
Issuance of No No pre-emptive rights to
additional shares of subscribe to additional shares
common stock of common stock.

*323
 SCHEDULE B
 DIFFERENCES BETWEEN THE OLD COMMON STOCK OF PUBLIC SERVICE
 CORPORATION OF NEW JERSEY AND THE NEW COMMON STOCK
 OF PUBLIC SERVICE ELECTRIC AND GAS COMPANY.
----------------------------------------------------------------------------
 Old Common Stock New Common Stock of
 of the Corporation Electric and Gas
----------------------------------------------------------------------------
Par value No par No par
No. of shares 5,503,193 shares 5,503,193 shares plus
 5,693,778 shares reserved
 for issuance on conversion
 of same number of shares of
 Dividend Preference Common
 Stock.
Proportionate Common stock which Under the plan common
extent of voting has one vote per share stock will have 48% of the
power with the preferred stock voting power. (Preference
 at all stockholders' common stock will have
 meetings, has 77.26% of 52% and, on full conversion,
 the voting power. 55% of the voting
 power.)
Right as to The holders of the Holders of 5,503,193 shares
additional 5,503,193 shares of of pre-emptive right to
shares common stock have purchase all additional shares
 pre-emptive rights, of common stock (or other
 together with holders of securities convertible into
 214,493 shares of 8% such stock) which may be
 Preferred Stock, to offered for sale for cash,
 purchase additional except where such offering is
 shares of common stock publicly made at competitive
 which may be issued. bidding to or through
 underwriters or investment
 bankers.