16 N.J. Super. 214 (1951)
84 A.2d 468
MARGARET MALONEY RITCHIE, HELEN MALONEY OSBORN AND GIRARD TRUST COMPANY, TRUSTEES UNDER WILL OF MARTIN MALONEY, DECEASED, PLAINTIFFS,
v.
MARY CATHERINE RITCHIE FARRELLY, MARGARET RITCHIE RIDSDALE, MARTIN M. OSBORN, ANNE CARBERRY FARRELLY, RICHARD L. FARRELLY, JR., PATRICIA FARRELLY, MARGARET RITCHIE FARRELLY, LISA CARBERRY FARRELLY, LOUIS C.R. FARRELLY, MARIE LOUISE FARRELLY, DIANA PAINE OSBORN AND MARTIN MALONEY OSBORN, JR., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided November 7, 1951.
*218 Messrs. Boyle, Archer & Greiner (Mr. F. Morse Archer, Jr., appearing), attorneys for plaintiffs.
Mr. Grover C. Richman, Sr., for adult defendants and Mary Catherine Ritchie Farrelly, guardian ad litem.
McLEAN, J.S.C.
This matter is submitted on the pleadings, depositions and briefs. The plaintiffs are the trustees under the will of Martin Maloney, late of Spring Lake. By these proceedings they seek the instructions of the court as to their rights and duties pursuant to the terms of the will and the recent legislative enactment of the "Prudent Man Act." The basic issues are whether or not the trustees are authorized to retain as trust investments: (a) securities derived from investments held by the decedent at the time of his decease; (b) securities acquired by the trustees by the *219 exercise of rights to subscribe thereto appurtenant to stocks held by decedent at the time of his death; (c) securities received from the Scranton-Lackawanna Trust Company under the terms of certain deeds of trust between the decedent and that institution, and (d) the effect of chapter 47, Laws of 1951 in relation to securities held or which may be purchased as assets for the estate.
The pertinent paragraph of the will reads:
"I hereby authorize my executors and trustees to retain unconverted so long as they shall see fit any and all securities owned by me at the time of my decease it being my desire that my investments shall not be changed unless my executors and trustees deem it prudent to do so. I also authorize and empower my said executors and trustees to make subscriptions for bond privileges and allotments and for syndicate interest, to such extent as they shall see fit, in companies in which my estate may have an interest at the time of my decease and to surrender or deposit shares of stocks and bonds belonging to my estate at any time for the purpose of taking part in any foreclosure or reorganization proceedings and in their discretion to pay assessments in connection therewith, and generally to take such steps in the premises as they may deem proper and advantageous to my estate. But I direct however that my said executors and trustees shall make no original investments in any securities other than those permitted by law to be made by executors and testamentary trustees.
I direct that all stock dividends, stock allotments and rights to subscribe to additional stocks and bonds and to take part in any refinancing of any corporation in which my estate already has an interest shall be treated as principal and not as income."
"It is axiomatic that in the judicial construction of a will and a determination of the rights and duties of persons thereunder, one of the primary considerations is to ascertain the intention of the testator. Such intent is to be gathered from the will in the light of the circumstances surrounding the testator at the time of the will's execution. This principle stands forth in our cases extending over the years." Also, "consideration should be given to the pecuniary and family situation of the testator." Blauvelt v. Citizens Trust Co., 3 N.J. 545 (1950), and cases there cited.

*220 A
Mr. Maloney was extensively interested in public utilities during the period of their greatest development, and acquired substantial holdings in utility companies, both gas and electric, which he owned at the time of his death. By his will he directed that his investments should be continued and designated members of his family who had been associated with him in the conduct of his business affairs, and the bank where he had done business, as trustees of his estate. These facts and the instructions Mr. Maloney gave in his will clearly indicate that he intended that the affairs of his estate should be handled as his business activities had been during his lifetime, except as to original investments to be made for the estate. His practice was to take advantage of the benefits that accrued through stock holdings in various corporations in which he was interested. These advantages consisted of stock dividends, stock allotments, rights to subscribe to additional stocks and bonds and to participate in corporation reorganizations and refinancing. It is obvious that it was his purpose to clothe his trustees with all the discretion and judgment which he had exercised in such matters as they pertained to the securities constituting his estate.
Among the securities owned by Mr. Maloney were 4,094 shares of common stock of United Gas Improvement Company, par $50, and 327 shares of common stock of American Light and Traction Company, par $100. After his death, the United Gas Improvement Company issued in exchange for said shares 511 6/8 shares of its no par $5 preferred stock and 20,470 shares of its no par common stock, and the American Light and Traction Company issued, in exchange for said shares of its stock owned by him, 1,308 shares of its common stock, par $25. Subsequently by mandate of the Securities and Exchange Commission, pursuant to the Federal Public Utility Holding Company Act of 1935, the United Gas Improvement Company and the American Light *221 and Traction Company were dissolved and in the course of reorganization there were issued to the plaintiffs, in exchange for their then holdings in these corporations, 17,500 shares of United Gas Improvement Company no par common stock and 1,308 shares of American Light and Traction Company $25 common stock. These stocks the plaintiffs now hold. Other securities since sold, and some cash were also received as a part of the distribution in the exchange.
"It is settled law in this State that where stock is retained under a testator's authorization permitting the retention of property owned by him, or where stock is retained under the authority of R.S. 3:16-2, new stock into which such investment may be converted as a result of merger, reorganization or other cause may be retained if the new stock is the equivalent or substantially the equivalent of the old." Fidelity Union Trust Company v. Cory, 9 N.J. Super. 308, 309, 312 (Ch. Div. 1950).
The testimony shows that with due allowance for the securities sold and taken in distribution and the cash received, the securities now retained by the trustees derived from the United Gas Improvement Company stock and the American Light and Traction Company stock preserved substantially the earning power and property value of the old companies at the time of Mr. Maloney's death, and it follows that these securities may he retained by the trustees as investments in the estate.

B
There have been issued since Mr. Maloney's death rights to subscribe to additional shares of stock in corporations in which he was a stockholder, and the plaintiffs now hold by virtue of the exercise of such rights 151 shares of the common stock of American Telephone and Telegraph Co., par $100; 120 shares of the Asbury Park National Bank and Trust Company, par $75; and 1,260 shares Commonwealth Edison Company of Chicago, par $100. The trustees ask if it is proper for them to retain these securities.
*222 "A stockholder prior to the increase (of stock) has a right to a voice in the management and to a share of the assets of the corporation, on final dissolution, in the proportion that his holdings bear to the entire outstanding capital. These rights are materially affected by an increase of the capital stock, and such increase must therefore be made in a manner to enable him to become the purchaser of such a proportion of the increased capital stock as will preserve his right to the same proportion in the assets on final liquidation as he originally had, and also the same voice in the management of the corporation." Wall v. Utah Copper Co., 70 N.J. Eq. 17, 33 (Ch. 1905). Cf. pre-emptive right of stockholder to purchase new stock under the Corporation Act, R.S. 14:8-17.
It may be fairly assumed from Mr. Maloney's experience with corporation matters that he had this philosophy in mind in granting authority to his executors and trustees to subscribe to new stock in corporations in which he was a stockholder. His purposes and intentions are evident, and in retaining these investments the trustees are acting within their powers and the authority granted.

C
By agreement dated December 8, 1922, the testator transferred to the Scranton-Lackawanna Trust Company, 106 shares of the capital stock of the Pennsylvania Railroad Company of the par value of $50, in trust, to pay a stated amount of the income to Mary White for life and on her death to re-transfer the security to the testator or, if then deceased, to his estate. The excess income of any was to be paid to Mr. Maloney. Similar trusts were created for Anna Lafferty and Johanna Maloney, and at the time of Mr. Maloney's death, the Scranton-Lackawanna Trust Company held 318 shares of the stock of the Pennsylvania Railroad Company for the purposes indicated. All of the beneficiaries having died, this stock was transferred by the Scranton-Lackawanna Trust Company to the trustees and it is now held by them.
*223 It is unnecessary to discuss the effect of the agreements on the title to Mr. Maloney to this stock. The question for determination is, did he intend that his right, title and interest therein should pass to his trustees to be administered as a part of the residue of his estate?
It appears from the agreements that Mr. Maloney never intended to divest himself of the ownership of this stock or any interest therein; that it was merely set aside to serve his own purposes and convenience, and any interest the beneficiaries had in the income was revocable by him at his pleasure. In the absence of any express instruction the stock falls into the category of the securities held by him at his demise and which he intended and authorized his trustees to hold as securities in the testamentary trust.

D
Plaintiffs ask instructions as to their rights and duties under chapter 47, Laws of 1951, N.J.S.A. 3:16-4.1 to 3:16-4.12, an act concerning investments by fiduciaries. The act permits fiduciaries to invest up to 40 per cent of the assets of a trust estate in investments other than investments specifically authorized by statute, except in cases in which a trust instrument otherwise provides.
The act results from an effort to supersede the policy of restricting investment of trust funds to securities authorized by statute, substituting the judgment of the fiduciary as in Massachusetts, in other words, substituting the "Prudent Man Rule" for the "Legal List." See article, A Proposed Fiduciary Investment Rule for New Jersey, by Mayo Shattuck, New Jersey Banker, vol. 21, no. 2, December 1950.
The Massachusetts rule and its appellation, the "Prudent Man Rule," emanate from the opinion of the Supreme Judicial Court of Massachusetts in Harvard College v. Amory, 9 Pick. 446 (1830) viz.:
"Trustees are justly and uniformly considered favorably, and it is of great importance to bereaved families and orphans, that they should not be held to make good, losses in the depreciation of stocks *224 or in general of the capital itself, which they held in trust, provided they conduct themselves honestly, discreetly, and carefully, according to the existing circumstances, in the discharge of their trusts. If this were held otherwise, no prudent man would run the hazard of losses which might happen without any lack or breach of good faith."
The "Prudent Man Rule," as administered in Massachusetts, permits trustees to invest 100 per cent of the assets of an estate in securities of their own choice. This rule has been adopted in 13 states in the last seven years. In other states there has been resistance to the adoption of the rule, but there seems to be unanimous agreement that under its operation better yield of income may be had without risking the safety of the investment. Hence, the compromise in some states of permitting a partial operation of the "Prudent Man Rule," for example, 35 per cent in New York, 40 per cent in New Jersey. The history of the legislation in New Jersey indicates that the first proposal would have permitted fiduciaries to invest 100 per cent of the assets of an estate under the "Prudent Man Rule."
Section 12 of the act provides: "This act shall apply to and govern trust estates heretofore and hereafter created, fiduciaries heretofore and hereafter appointed, and trust instruments heretofore and hereafter made." Mr. Maloney died in 1929 and the effect of the retrospective feature of this section on his estate is questioned.
Statutes governing investments by fiduciaries are mandatory for the protection of cestuis and remaindermen and guidance of fiduciaries. Penn. Co. for Ins. on Lives and Granting Annuities v. Gilmore, 142 N.J. Eq. 27; 59 A.2d 24 (Ch. 1948). And it has been the legislative policy to make changes in the Fiduciary Investment Act to meet changed conditions. Such changes have been frequent and have been made to apply to existing trusts. They would fail in their purpose otherwise. The right of the Legislature to so provide has been accepted and has never been challenged, so far as I have been able to ascertain. The existing Fiduciary Investment Act contains such a provision. N.J.S.A. 3:16-1(s); *225 cf. R.S. 3:16-17 and 18. A vested right in the fiduciary to retain securities legal under the law of this State when made is recognized and protected by a provision of the Fiduciary Investment Act which continues such investments as legal, notwithstanding the provisions of new legislation. N.J.S.A. 3:16-1(x).
It will be presumed that the act in question is valid and applies to the conduct of the trustees of Mr. Maloney's estate.
The authority to make investment in the discretion of the trustees (designated as limited legal investments), is provided by secs. 2 and 3, as follows:
"2. In investing and reinvesting money and property of a trust estate, and in acquiring, retaining, selling, exchanging and managing investments, a fiduciary shall exercise care and judgment under the circumstances then prevailing, which persons of ordinary prudence and reasonable discretion exercise in the management of their own affairs, considering the probable income as well as the probable safety of their capital.
3. Within the limitations of the standard prescribed by section two of this act, a fiduciary may invest in any investments whatsoever; except that no fiduciary shall make any investment for a trust estate in any limited legal investment if, on the valuation date, the aggregate value of all limited legal investments held in such trust estate exceeds, or if the investing in such limited legal investment would cause such aggregate value to exceed, forty per centum of the aggregate value of all the property which constitutes the principal of such trust estate."
Other sections of the act provide standards by which the trustees shall be governed in making such investments, but with these we are not now concerned, for if the trustees of Mr. Maloney's estate are permitted to act under the statute they must act accordingly. We are here particularly concerned with sections 8 and 9 of the act. These sections provide:
"8. If a trust instrument prescribes, defines, limits or otherwise regulates a fiduciary's powers, duties, acts or obligations in acquiring, investing, reinvesting, exchanging, retaining, selling, valuing or otherwise *226 acting with respect to the property of a trust estate, the trust instrument shall control notwithstanding this act, * * *.
9. Whenever any trust instrument or any statute of this state, other than Article 9 of `An act concerning banks and banking institutions (Revision of 1948)' approved April 29, 1948 (P.L. 1948, c. 67), directs or authorizes a fiduciary to make any investment for a trust estate in `legal investments,' or in `investments in which a fiduciary may by law invest' or in `legal investments for trustees' or uses words of similar import, such words shall, in the absence of an express provision to the contrary contained in such trust instrument or such statute, be taken to include limited legal investments of the aggregate value as limited by this act."
The will of Mr. Maloney authorized his trustees to retain his investments and prescribed their rights and duties. Hence, by section 8 of the statute the will controls as to securities owned by Mr. Maloney at his demise, including derivatives. But in making original investments in conformity with the limitations of the will that original investments shall only be made in securities permitted by law, if the plaintiffs desire to act under the "Prudent Man" statute regard must be had for the provisions of section 3, "that no fiduciary shall make any investment for a trust estate in any limited legal investment if, on the valuation date, the aggregate value of all limited legal investments * * * would cause such aggregate value to exceed 40 percentum of the aggregate value of all the property which constitutes the principal of such trust estate."
The history of the legislation and the emphasis placed on the limitation by the use of the word "aggregate" in section 3 of the act makes clear the legislative intent and indicates a cautious approach to the expansion of state policy away from the "legal list," and suggests a strict construction of chapter 47, Laws of 1951, the "Prudent Man" statute, against expansion by fiduciaries of the power granted.
The applications for counsel fees on behalf of plaintiffs and defendants are appropriate and will be allowed. Katz v. Farber, 4 N.J. 333 (1950).