**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0554-19T1

BEN TORRES and
CHRISTINA TORRES,

     Plaintiffs-Appellants,

v.

TIMOTHY DOHERTY and
TRACY FOWLER,

     Defendants-Respondents.

_____

Submitted December 7, 2020 – Decided February 1, 2021

Before Judges Rothstadt and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0383-18.

Sacco & Fillas, LLP, attorneys for appellants (James R. Baez, on the briefs).

Difrancesco Bateman, attorneys for respondent Timothy Doherty (Richard J. Guss, on the brief).

PER CURIAM

Plaintiffs Ben and Christina Torres appeal from a September 13, 2019 order granting defendant Timothy Doherty's motion for summary judgment, dismissing their complaint and denying their motion to reopen and extend discovery, and from a November 18, 2019 order denying plaintiffs' motion to vacate. Plaintiffs filed their complaint seeking damages for injuries sustained in an automobile accident with defendant. Judge Thomas C. Miller granted summary judgment and dismissed plaintiffs' complaint because they did not provide expert opinion evidence establishing that their injuries vaulted the "Limitation on Lawsuits" verbal threshold under the Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35.

On appeal, plaintiffs argue that other medical evidence satisfied the threshold, and, in any event, the judge should have granted their motion to reopen and extend discovery because they established "exceptional circumstances." Finally, they argue that Judge Miller erred by denying their motion to vacate because a report from Christina's[1] treating doctor, obtained on September 23, 2019, and their medical records regarding treatment in early September 2019 constitute "newly discovered evidence" that would have altered

---

[1] We refer to the individual plaintiffs by their first names for clarity and to avoid any confusion caused by their common surname.

the outcome of the September 13, 2019 order. We affirm both orders substantially for the reasons stated by Judge Miller in his comprehensive written decisions issued in support of the challenged orders.

We derive the following facts from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to plaintiffs, the parties who opposed entry of summary judgment. Edan Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135 (2017).

The accident occurred in November 2017 when defendant struck plaintiffs' vehicle in the rear. At the time, Ben was driving and Christina, plaintiffs' children, and their dog were passengers.[2] The impact of the collision caused plaintiffs' car to strike a vehicle in front of them that was being driven by defendant Tracy Fowler.[3]

Plaintiffs allegedly sustained injuries in the accident for which they received treatment. After the accident, Ben did not immediately feel pain, but

[2] At the time, plaintiffs were New York residents, and their vehicle was registered in that state. The complaint erroneously identified plaintiffs' residence as Burlington County, New Jersey.

[3] Defendant Tracy Fowler is not a party to this appeal. At some point, she was dismissed from the litigation by stipulation of the parties.

A-0554-19T1

did start feeling pain in his lower back "once the adrenaline kind of calmed [him] down." He spoke with a police officer at the scene and explained what happened, and when he was evaluated after an ambulance arrived, he told the response team that his lower back was hurting, but he did not want to go to a hospital. When he left the accident scene, the pain in his lower back was "about six" on a scale of one to ten. Ben never had lower back pain of that nature before the accident.

Ben first sought chiropractic treatment two days after the accident for pain in his lower back and neck, headaches, and tingling around his neck and shoulder on the right side. A treatment plan was developed that included acupuncture, chiropractic adjustments, and physical therapy. Ben initially went for treatment three times per week but stopped in "January or February" 2018 because he did not feel he was improving. He soon after started treatment with another medical provider at Peak Performance and continued physical therapy there for "close to a year."

Ben also underwent a nerve test and an MRI on his neck and back. He understood from a conversation with one of his doctors about the MRI results that he had "discs that were bulging" on his neck and lower back. The MRI records indicated there were herniations and his treatment records stated that he

4

had sprains and strains throughout his spine. Treating doctor's reports stated Ben experienced restrictions to his range of motion in his neck and back.

Once there was "not much more they could do" through physical therapy, Ben saw a pain management doctor and received three injections under the care of that doctor. He received one injection for his neck and one for his back in 2018. He later had a second injection for his back. These injections did not completely relieve the pain, but Ben felt they helped him improve and relieved some of the pain. According to Ben his pain went from an "eight or nine" to about "a four and a half." He did not receive any other treatment. Ben's last day of treatment before resuming in September 2019 was March 22, 2019.

After the accident, Ben typically had lower back pain every day that impacted everything he did. Depending upon his level of activity, he would get numbness and tingling in his right arm, and if his pain got too strong, he would have headaches from the pain. Also, after the accident, he was unable to finish projects around the house and was unable to play sports with his children as much as he had in the past. Ben took over-the-counter analgesics and topical pain relievers, and used a heating pad for the pain as needed. He was still able to work, drive, and take care of himself.

A-0554-19T1

When the accident occurred, Christina felt nauseous, and told a responding medic her head was hurting badly and that she felt dizzy, but she did not want to go to the hospital. Once she returned home, Christina had a bad headache and her neck and her upper back began to hurt.

Before the accident, Christina was healthy, and she had no limitations. Christina, who worked as an air traffic controller, had to miss work for a few doctor's appointments, but did not have any problems performing her job because of the injuries she sustained in the accident. She did have difficulty doing physical exercises, bathing her child, doing laundry and other personal and household tasks. In order to relieve her pain, Christina took anti-inflammatory medication.

Christina began treatment two days after the accident at the same place that treated Ben. Although she was unsure if she had ever been treated by an orthopedic doctor prior to the accident, she had never been treated by a chiropractor or neurologist. After the accident, she was treated from "end of November, beginning of December, to February-ish." During that time, she received electro heat and physical therapy, as well as two treatments with the chiropractor.

A-0554-19T1

In February 2018, Christina left that treatment provider along with Ben, and went to Peak Performance as well, where she received treatment until June 2018. When Peak Performance told her they could not do more for her, she was treated by a pain management provider. She also had three injections in her neck between October and December that helped her for the first seven days after each one, but then they wore off and the pain was worse than before. Christina's last date of treatment prior to September 2019 was October 22, 2018.

Christina also underwent a cervical MRI that she understood revealed one of the discs in her neck was herniated and another one was bulging. The record of the results of the MRI confirmed her understanding.

Plaintiffs filed their complaint in March 2018. Defendant filed an answer, and twenty separate defenses, including that plaintiffs' claims were barred because they failed to "pierce the verbal threshold" under N.J.S.A. 39:6A-8. Thereafter the parties pursued discovery. The original discovery end date, February 18, 2019 was first extended by consent to April 19, 2019 and then by order to June 3, 2019.

The discovery served included plaintiffs' answers to defendant's interrogatories. The only expert witnesses identified in their answers were their

treating medical providers, none of whom provided a narrative report as to plaintiffs' injuries being permanent or arising from the accident.

After the discovery end date, the parties filed motions for summary judgment. Plaintiff sought partial summary judgment as to defendant's liability and defendant sought judgment "on the issue of the verbal threshold." Defendant did not oppose plaintiffs' motion. Plaintiffs filed opposition to defendant's motion for summary judgment along with a cross-motion to extend discovery. As part of their supporting submissions, plaintiffs included copies of their medical treatment records.

On August 16, 2019, Judge Miller granted plaintiffs' unopposed partial summary judgment motion as to defendant's liability. Thereafter, the parties participated in an unsuccessful arbitration that resulted in the court assigning a trial date of October 28, 2019 as well as defendant's motion and plaintiffs' cross-motion proceeding to oral argument.

According to defendant's motion, plaintiffs were subject to the verbal threshold because they resided outside of New Jersey and their insurance carrier did business in New Jersey. Moreover, plaintiffs could not vault the threshold because they had not produced "medical evidence in the form of a narrative report specifically addressing the issues of the threshold," which required

"medical expert reports indicating a diagnosis of injuries sustained in the motor vehicle accident and addressing the issues of causation and permanency." Relying on their medical treatment records, plaintiffs argued that "it [was] clear that there [were] genuine issues of fact as to whether plaintiffs suffered permanent injuries as a result of the underlying accident."

As to their cross-motion to extend discovery, plaintiffs submitted a certification from their attorney that stated plaintiffs underwent "final narrative evaluations" with their physicians in August 2019. Counsel also certified that after the discovery end date was set for June 3, 2019, "diligent steps were taken to complete the plaintiffs' deposition, have narrative evaluations performed and to exchange said narrative reports as soon as possible." Yet, "despite these diligent efforts with several follow-ups, the exchange of the final narratives is still outstanding."

Counsel also stated that he failed to request an extension of discovery due to "unforeseeable issues regarding attorney staffing [in his office] during the time period of March 2019 through June 2019," specifically, "between five and six" attorneys left the firm. He certified that he appeared for court and "signed off on multiple disclosures" in this matter but was not formally assigned it until June 2019, after the last day for filing a motion to extend discovery had passed.

Defendant filed a reply to plaintiffs' opposition, in which defendant's attorney explained that plaintiffs' opposition acknowledged that they failed to serve the necessary narrative expert reports, and therefore, did not "establish that they had sustained a permanent injury which would satisfy the verbal threshold," and by "attaching all discovery" previously provided, did "not address the issue." In his response, plaintiffs' counsel asserted that he took diligent steps to complete discovery, but due to understaffing at the time, he was unable to submit narrative reports regarding plaintiffs' injuries. He also added that plaintiffs underwent "additional surgical procedures," namely, Christina had a "cervical facet branch block injection" and Ben had a "cervical epidural injection" on September 6 and September 9, 2019.

After considering the parties' submissions and oral arguments on September 13, 2019, Judge Miller entered his order granting defendant summary judgment. The judge set forth his reasons in a comprehensive, detailed written decision issued the same day.

In his decision, the judge explained it was undisputed that plaintiffs' claims were "subject to a Limitation on Lawsuit Threshold, pursuant to N.J.S.A. 39:6A-8(a)," which meant, under AICRA, plaintiffs were "prohibited from pursuing a claim" unless they sustained a permanent injury as a result of the

accident. Under AICRA, a "permanent injury is defined as an injury in which a body part or organ, or both, that has not healed to function normally and will not heal to function normally with further medical treatment." The judge found it was "uncontradicted that the [p]laintiffs have not supplied any narrative medical report indicating a diagnosis of injuries in the motor vehicle accident that addresses issues of causation and permanency." Nor did plaintiffs reference any specific portions of the medical records and instead, they "simply provided the [c]ourt with the records in what can be described as [the] '[k]itchen [s]ink [a]pproach' so that presumably the [c]ourt will review the relevant portions of the discovery in this matter in order to glean whether [p]laintiffs have a cause."

The judge then methodically reviewed in detail plaintiffs' "mass of medical records," and their deposition transcripts to determine whether they met the verbal threshold by demonstrating their injuries were permanent and caused by the car accident. He concluded that none of the records included any mention of permanency or causation of the injury, and also observed that plaintiffs identified treating physicians as experts but did not provide any narrative reports to address the "requisite elements of proof" in order to make out a prima facie case. Thus, "[b]ased on the fact that the plaintiffs as a matter of law must proffer

11

medical expert opinions based upon objective medical proof," and failed to do so, they did not satisfy the verbal threshold as a matter of law.

The judge also addressed plaintiffs' reliance on their intention to serve an expert report to detail the treatment they had on September 6 and September 9, 2019 and observed that although plaintiffs may have received those treatments, there was no medical opinion evidence indicating the treatments were medically necessary or related to permanent injuries caused by the accident.

As to their cross-motion to extend discovery, Judge Miller found that plaintiffs "fail[ed] to set forth the requisite exceptional circumstances" that apply whereas here, an arbitration date passed and the matter was scheduled for trial. He found that plaintiffs' counsel's certification "reveal[ed] numerous excuses and no explanations to justify exceptional circumstances," and failed to even include the dates when several attorneys left the firm causing the alleged delay in obtaining expert reports. Moreover, in any event, the certifying attorney appeared at plaintiffs' depositions in May 2019, as well as the arbitration hearing in July 2019, and according to the judge, "[i]t can be reasonably inferred that the file, at least at the time of the depositions, was reviewed to determine what, if any, additional discovery was needed and move forward with the same." The judge noted that plaintiffs' counsel could have moved to extend discovery at that

12

time in order to obtain the required reports. The judge entered his order that day.

Plaintiffs then filed a <u>Rule</u> 4:50-1 motion to vacate the September 13, 2019 orders. In support of the motion, they submitted a report from Dr. Robert Iadevaio, Christina's treating physician that stated Christina had a left-sided cervical facet injection at various levels on September 9, 2019, and that they were waiting for "her follow-up from this injection." The report also stated her "pain and treatment" for pain "appear clearly causally related to the accident as described."

At the November 15, 2019, oral argument on plaintiffs' motion, plaintiffs' counsel advised that since the entry of the earlier order, he received additional medical records and the report, "which show[ed] that Christina . . . suffered an injury that is causally related to the accident and would meet [the] verbal threshold" and that Christina "also underwent additional injection and treatment . . . right around the time that the motion was returnable and that she continued treatment with [her doctor] afterwards." Defendant's attorney contended that there was no new evidence to warrant vacating the September order as Christina had been treating with the same doctor since 2018 and the

opinion he was now offering could have been determined prior to the discovery end date. He also noted that there still was no report about Ben's injuries.

Judge Miller denied plaintiffs' motion on November 18, 2019 and issued another thorough written decision stating his reasons. In rejecting plaintiffs' claim that the summary judgment order should be vacated because of new evidence, the judge found that there was no newly discovered evidence to change his previous ruling. The judge cited to the New Jersey Supreme Court's opinions in DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 264 (2009) and Quick Chek Food Stores v. Springfield Twp., 83 N.J. 438 (1980) that set forth the criteria for new evidence that warrants the vacating of an earlier order and concluded that the information supplied by plaintiffs did not meet those requirements.

Judge Miller found there was no new evidence regarding Ben, and as to Christina, the judge noted that it was "undisputed" that despite the "voluminous" pages of medical records, there was nothing in the record to prove her injuries were permanent or caused by the accident. He stated that although the new report was obtained on September 23, 2019, and "indicated, for the first time, that [Christina's] injuries were permanent injuries and that her injuries were caused by the accident," "there [was] no indication why the medical opinions . . .

obtained were not obtained earlier." He also noted that previous records from Christina's doctor did not address whether she suffered a permanent injury, and the new report "indicated that although [Christina] had been a patient of his for over a year . . . no indication was given as to whether he could have issued his opinions earlier in time, or even whether he had been asked to do so."

Judge Miller also addressed plaintiffs' cross-motion to extend. He reiterated that there was no basis to extend discovery because plaintiffs' counsel had to establish exceptional circumstances and "understaffing and overworked attorneys is not [an] exceptional circumstance." This appeal followed.

We review a trial court's order granting summary judgment de novo, applying the same standard as the trial court. RSI Bank v. Providence Mut. Fire Ins., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Under that standard, summary judgment will be granted when "'the competent evidential materials submitted by the parties,' [viewed] in the light most favorable to" the non-moving party, show that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38); accord R.4:46-2(c).

"To defeat a motion for summary judgment, the opponent must 'come forward with evidence that creates a genuine issue of material fact.'" Cortez v. Gindhart, 435 N.J. Super. 589, 605 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012)). "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande, 230 N.J. at 24 (quoting Bhagat, 217 N.J. at 38). "If there are no genuine issues of material fact, we must then decide whether the trial court correctly interpreted the law." Dickson v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 530 (App. Div. 2019). In this review, the appellate court owes "no special deference" to the motion judge's legal analysis. RSI Bank, 234 N.J. at 472.

We conclude from our de novo review that, for the reasons stated in Judge Miller's thorough written decision, he correctly determined that plaintiffs did not satisfy their burden on summary judgment to come forward with evidence to vault the verbal threshold. Specifically, plaintiffs failed to provide "objective clinical evidence that [their] injuries were permanent and causally related to the automobile accident," as required by AICRA. Escobar-Barrera v. Kissin, 464

16

N.J. Super. 224, 234 (App. Div. 2020). Simply dropping plaintiffs' medical records in the judge's and defendant's lap did not meet the requirement to provide expert medical evidence.[4] See N.J.S.A. 39:6A-8 (addressing a plaintiff's burden under AICRA and defining a "permanent injury"); see also Davidson v. Slater, 189 N.J. 166, 181 (2007) ("To vault AICRA's verbal threshold an accident victim need only prove an injury as defined in the statute.").

Moreover, we conclude the judge did not abuse his discretion by not extending discovery to allow for the late filing of expert reports. Quail v. Shop-Rite Supermarkets, Inc., 455 N.J. Super. 118, 133 (App. Div. 2018). Plaintiffs did not establish the "exceptional circumstances" required once the arbitration had been completed and a trial date scheduled. See R. 4-24-1(c); see also Szalontai v. Yazbo's Sports Café, 183 N.J. 386, 396-97 (2005) (strictly construing Rule 4:24-1(c) to require an exceptional circumstance showing

---

[4] Relying on Delvecchio v. Twp. of Bridgewater, 224 N.J. 559 (2016), and Stigliano v. Connaught Labs, Inc., 140 N.J. 305 (1995), plaintiffs correctly argue that treating physicians may "offer medical testimony regarding the diagnosis and treatment of their patients," and "[t]hat testimony can include opinions on causation of the injury to a patient." However, under the court rules, a party seeking to present treating physician testimony at trial must disclose the substance of the witness's anticipated testimony, and the basis for that testimony, if requested to do so in discovery. Delvecchio, 224 N.J. at 579. As Judge Miller determined, that was not done here.

A-0554-19T1

particularly after the arbitration had already occurred); <u>Rivers v. LSC P'ship</u>, 378 N.J. Super. 68, 79 (App. Div. 2005) (stating the four conditions that warrant a finding of exceptional circumstances) (citing <u>Vitti v. Brown</u>, 359 N.J. Super. 40, 51 (Law Div. 2003)).  Under the circumstances presented here, the staffing issues that allegedly prevented timely service of expert reports did not establish the "exceptional circumstances" that warranted an extension of discovery.[5]  <u>See</u> <u>Rivers</u>, 378 N.J. Super. at 79.

Finally, we find no merit to plaintiffs' contention that Judge Miller should have vacated his summary judgment order under <u>Rule</u> 4:50-1 based upon "newly discovered evidence" in the form of Dr. Iadevaio's report and plaintiffs' September 2019 treatment records.  Suffice it to say there was no evidence that

---

[5]  In reliance on <u>O'Donnell v. Ahmed</u>, 363 N.J. Super. 44 (Law Div. 2003), plaintiffs allege they showed exceptional circumstances.  In <u>O' Donnell</u>, the Law Division set forth a non-exhaustive list of examples of what could constitute exceptional circumstances and included that "[t]he disclosure of a disruption of one's office by partners or associates having health problems or leaving, especially if they had responsibilities for the matter before the court, would probably be persuasive."  <u>Id.</u> at 51.  It also provided that "facts must be shown in a detailed certification to the court, making clear that the reasons were beyond the reasonable control of the party seeking relief."  <u>Id.</u> at 52.  Judge Miller did not abuse his discretion by finding those circumstances did not exist here.  <u>See</u> <u>Rivers</u>, 378 N.J. Super. at 80-81 (addressing the plaintiff's reliance on <u>O'Donnell</u> and concluding there was no abuse of discretion where counsel provided "no valid explanation" for his lack of due diligence prior to a family member's death at the end of the discovery period).

the doctor's opinion that Christina's injuries were caused by the accident and permanent in nature was "unobtainable by the exercise of due diligence for use at the trial," before the close of discovery, DEG, LLC, 198 N.J. at 261, where the doctor treated Christina from early 2018 through September 2019 and never issued a report. Also, the September 2019 treatment records would not have changed the fact that plaintiffs never met their burden to produce the necessary medical opinion evidence before the close of discovery.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION